# WHEELING.

## GUFFY v. HUKILL.

Submitted June 10, 1890—Decided June 24, 1890.

1. LEASE—CONDITIONS—BREACH—FORFEITURE.

Where a lease for years contains a clause of forfeiture for breach of its covenant to pay rent or other covenant, but no clause of re-entry for such forfeiture, demand and re-entry is not the only mode by which the landlord may enforce the forfeiture.

2. LEASE—CONDITIONS—FORFEITURE—RE-ENTRY.

A lease for years for drilling for petroleum-oil and gas contains the following provision: "The parties of the second part covenant to commence operations for said purposes within nine months from and after the execution of this lease, or to thereafter pay to the party of the first part one dollar and thirty three and a third cents.per month until work is commenced, the money to be deposited in the hands of John Kennedy for each and every month. And a failure on the part of said second parties to comply with either one or the other of the foregoing conditions shall work an absolute forfeiture of this lease,"—and there is no covenant for re-entry, and there is failure to commence operations and to pay money in lieu thereof, and the lessor leases to another person. *Held*, the first lease is thus avoided, and the second lease is good against it, as the execution of the second lease is a sufficient declaration of forfeiture without demand and re-entry.

3. LEASE—UNLAWFUL DETAINER.

The second lessee may maintain unlawful detainer against the first lessee in possession.

*Keck & Son* for plaintiff in error, cited:

1 W. Va. 117; 8 W. Va. 308; 6 W. Va. 515; *Id.* 212; Code c. 93, §§ 16, 17; 13 W. Va. 12; 23 Gratt. 278; Hutchinson Treat. 673–679; 2 Lom. Dig. 91; Smith's Lead.

Cas. 93–97; 4 Kent Comm. 131 t. p.; 6 W. Va. 206; 21 W. Va. 277; 23 Gratt. 234; 13 Gratt. 278.

*O. Johnson* for plaintiff in error, cited:

24 W. Va. 657; 3 Rand. 516; 10 W. Va. 115; 21 W. Va. 530; 25 W. Va. 678; 26 W. Va. 274; *Id.* 149; 28 W. Va. 524; 29 W. Va. 778; 1 W. Va. 117; 8 W. Va. 308; 13 W. Va. 13 p't 4 Syll.; 24 W. Va. 685; 9 Leigh 511; 4 Gratt. 283; 10 W. Va. 596; 2 Leigh 488; Bac. Abr. Obligations (c); 4 T. R. 313; 9 W. Va. 447; 3 T. B. Mon. 376; Code c. 13 § 15; 3 H. & M. 144; 15 Gratt. 108; 10 W. Va. 596; Code c. 72 § 4; 5 W. Va. 547; 12 Gratt. 98; 12 Wall. 47; 7 How. 172; 102 U. S. 68; 107 U. S. 466; 8 Wheat. 1; 13 Pet. 107; 103 U. S. 756; 1 How. 189; 21 How. 493; 10 How. 343; 4 Wall. 232; 109 U. S. 504; 2 McL. 596; 4 Low & Mar. 312; 17 Comm. 441; 25 Am. Dec. 282; 29 Am. Dec. 543; 128 Mass. 291; 10 Am. Dec. 705; 26 W. Va. 141; 6 Leigh 278; 5 Rand. 1; 3 Leigh 147; 6 W. Va. 508; 8 W. Va. 515; 18 W. Va. 579; 26 W. Va. 345; 51 N. J. L. 34; 123 Pa. St. 491; Wills *v.* Nat. Gas Co., Pittsb. Leg. Journ. Nov. 20, 1889; 6 B. & C. 519; 6 M. & S. 121; 2 Chitt. 247; Tayl. Land. & Ten. § 492; 4 B. & A. 401, 664; 1 M. & W. 402; 124 Mass. 534; 12 Barb. 440; 12 Ind. 194; 29 Conn. 331; 35 Conn. 25; 17 Johns. 66; 1 How. 211; 6 M. & S. 121; 2 B & Ald. 168; 6 Serg. & R. 151; 4 Rawle 123; 8 Am. & Eng. Ency. of Law 448; 7 East 363; 3 C. & P. 613; 3 Wend. 230; 15 Wall. 471; 40 Cal. 284; 56 N.Y. 157; 2 Comst. 141; 12 Ohio R. 214; 21 B. J. Saund. 287 N. 16; 13 Ohio St. 471; 7 Wall. 420; Tayl. Land. & Ten. § 493, N. 6; 29 Conn. 331; 1 M. & W. 402; 40 Mo. 449; 118 Mass. 118; 4 Col. 303; 58 N. Y. 323; 3 Cal. 334; 63 Ind. 415; 3 Ind. 132; 21 Ind. 454; 53 Ind. 229; 41 Cal. 432; 100 Mass. 353; 49 Ill. 211; 98 Pa. 565; 13 W. Va. 12; 15 Wall. 471; 1 How. 211; 7 Wall. 416; 27 Conn. 331; 4 Cush. 152; 3 C. & P. 613; 63 Ind. 415; 3 Ind. 132; 21 Ind. 454; 53 Ind. 229; 3 Cal. 273; 40 Cal. 384; 41 Cal. 444; 49 Ill. 211; 4 Col. 303; 6 B. & C. 519; 80 Pa. St. 142; 96 Pa. St. 307; 21 Hun 26; 2 Keys 323; 69 N. Y. 264; 1 Saund. Ch'y 52; 2 Seld. 81; 9 Paige 427; 6 Binn. 419; Stat. 4 Geo. II, c. 28 § 2; 3 Harris 306; 123 Pa. St. 491; Westmoreland & Cambria Gas Co. *v.*

DeWitt, Pittsb. Leg. Journ. Dec. 11, 1889; 31 W. Va. 101; 22 W. Va. 521; Tayl. Land. & Ten. 370; 2 Bouv. L. Dict. "Rent." 437; 1 Wall. 61; 60 Pa. St. 452; 29 Conn. 340; 62 N. Y. 486; 48 N. Y. 486; 4 Munf. 332; 16 Ves. 402; 2 Conn. 299; 22 Mo. 369; 1 Edw. Ch'y 394; 44 Vt. 285; 26 N. J. E. 434; 8 Am. Rep. 368; 3 Call 491; 23 Gratt. 331.

*J. W. Donnan* of counsel for Hukill cited:
3 Cal. 59; 38 Am. Dec. 383; 1 S. & M. 494; 14 Pet. 97; 3 Ind; 316; 18 N. H. 340; 1 S. & M.111; Wood Stat. of Frauds § 415; 1 Esp. 190; 58 Md. 546; 9 Leigh 387; 130 Pa. 222; 1 Washb. Real Prop. 331*; 6 Serg. & R. 152; 29 Conn. 331; 6 Ired. 67; Tayl. Land. & Ten. §§ 492, 495; 13 W. Va. 12; 49 Ill. 211; 100 Mass. 353; 4 N. H. 251; 20 Ill. 120; 15 N. H. 72; 17 Johns. 70; 40 Cal. 384; 13 Ohio N. S. 471; 1 Smith Lead. Cas. 132–134 & cases cited; 15 Wall. 476; 1 How. 215; 146 Mass. 399; 68 Am. Dec. 85 N.; 15 Norris 307; 21 Hun 26; Broo. Leg. Max. 457; 60 Pa. St. 172; 18 Law Times R. N. S. 806; 57 Pa. St. 83; 95 Pa. St. 258; 8 Weekly Notes Cas. 225; 2 Pa. County Court 165.

*Berkshire & Sturgiss* for defendants in error, cited:
15 Gratt. 190; 9 W. Va. 67; 80 Pa. St. 142; 96 Pa. St. 307; 123 Pa. St. 491; 25 Week. Notes of Cas. 69; 20 Pittsb. Leg. Journ. N. S. 165; Litt. Inst. 218 a.; Cr. Dig. Tit. XIII c. 2, § 45; 5 Serg. & R. 375; 19 N. Y. 100; 21 How. 26.

*Alfred Caldwell* of counsel for defendants in error, cited:
1 Whart. Ev. §§ 726, 740; 2 Phill. Ev. 210; 1 Greenl. 572; 25 W. Va. 642; 8 W. Va. 515; 30 W. Va. 34; 8 W. Va. 553; 2 Am. Lead. Cas. 549 *et seq.;* 1 Washb. Real Prop. 542; 81 Va. 764; 84 Va. 706; Tayl. Land. & Ten. §§ 14, 31; 102 U. S. 64; 107 U. S. 437; 111 U. S. 584; 101 Pa. St. 452; 57 Pa. St. 83; 107 Pa. St. 57; 3 P. F. Smith 229; 15 Norris 307; 30 P. F. Smith 142; 8 Cas. 241; 120 Pa. St. 590; 88 Pa. St. 198; 96 Pa. St. 307; 55 Pa. St. 164; 72 Pa. St. 173; 77 Pa. St. 221; 123 Pa. St. 491; 112 Pa. St. 443; 110 Pa. St. 312; 4 W. Va. 543; 21 Hun 26; 1 Smith Lead. Cas. 109 s. p.; 2 Seld. 81; 9 Paige 427; 86 N. Y. 638; 13 W. Va. 12; 47 Mich. 55; 89 N. C. 31; 83 Va. 547; Code c. 93 § 16 *et*

*seq.;* Coke Litt. 218 b.; 5 Serg. & R. 385 ; 1 Smith Lead. Cas. 87 ; Ad. Eject. 20, 21; 25 Gratt. 789; 25 W. Va. 407; 24 W. Va. 685 ; 12 Gratt. 473 ; 23 Gratt. 363 ; Code c. 134 § 1 ; 18 Gratt. 648 ; 73 Ill. 75 ; Tayl. Land. & Ten. § 312 ; 24 Ill. 278 ; 3 Hill 33 ; 5 Serg. & R. 424 ; 29 Md. 324 ; 21 N. H. 234 ; 24 Mo. 13 ; 50 Mo. 350 ; Tayl. Land. & Ten. § 54 ; 4 Rand. 468, 476, 477.

A. F. *Haymond* of counsel for defendants in error, cited :

2 White & Tud. 1051, 1052, 1061 ; 3 Leigh 161, 186, 187 ; 1 Lom. Dig. 148, 267, 280 ; 2 White & Tud. 1119–1124 ; 2 Ia. 126 ; 2 Paige Ch'y 222 ; 80 Pa. St. 142 ; 96 Pa. St. 307 ; 123 Pa. St. 491 ; 21 Hun 26 ; 17 Ohio 425 ; 21 Ill. 227 ; 55 Ill. 307 ; 63 Ill. 468 ; Code c. 93 §§ 16–18 ; 13 W. Va. 12 ; 1 Lom. Dig. 280 ; 5 Mass. 321 ; 44 N. H. 90 ; 17 Serg. & R. 375 ; 12 Reporter 166 ; 32 Me. 394 ; 27 Gratt. 403 ; 12 Leigh 524 ; 6 Gratt. 517 ; 1 Greenl. Ev. (13th Ed.) § 572 ; 3 Call 492 s. p.; 33 Gratt. 497, 501, 502 ; 20 W. Va. 511 pt. 6 syll., 567 ; 9 N. Y. 100 ; 25 Weekly Cas. 69 ; 20 Pittsb. Leg. Journ. N. S. 165.

BRANNON, JUDGE :

This was an action of unlawful detainer in the Circuit Court of Monongalia by Guffy and Murphy against Hukill for possession of thirty acres of land for drilling for petrolium-oil and gas, in which there was judgment for plaintiffs, to which judgment Hukill obtained this writ of error.

The case was decided upon a demurrer to evidence, from which it appears to be a contest between those claiming under two conflicting leases made by Wise for drilling for oil and gas. Wise made to Hays a lease of this thirty acres, dated 30th June, 1886, for twenty years, which on 10th January, 1889, was assigned to Hukill. Under this lease Hukill defends.

By lease dated 11th July, 1888, Wise leased the thirty acres to Rezin Calvert for twenty years, and Calvert assigned this lease to Ida C. and Vinnie Calvert on 16th March, 1889, and they assigned it to Guffey and Murphy on 8th May, 1889. Under this lease the plaintiffs claim.

It is claimed by the plaintiffs that the hostile lease to Hays became forfeited under provisions contained in it,

and therefore the later lease to Calvert confers a valid right. This Hays lease contains this clause: "The parties of the second part covenant to commence operations for said purposes within nine months from and after the execution of this lease, or to thereafter pay to the party of the first part one dollar and thirty three and a third cents per month until work is commenced, the money to be deposited in the hands of John Kennedy for each and every month, and a failure on the part of the said second parties to comply with either one or the other of the foregoing conditions shall work an absolute forfeiture of this lease." Hays' lease was recorded 26th October, 1886, before the execution of the Calvert lease. About 1st May 1889, Hukil began boring for oil under the Hays lease and continued the work until November, 1889, when he obtained large quantities of oil in two wells. No rent was paid under the provision for the monthly payment of one dollar and thirty three and a third cents on the Hays lease until about 4th January, 1889, when or later Hays paid it to Wise. Kennedy in October, 1888, offered to pay Wise this rent, but he declined to receive it then but received it afterwards from Hays. All the rent due Wise under the Hays lease was paid him. Hukill took possession under the Hays lease and began boring for oil with the knowledge and consent of Wise. No demand was ever made by Wise on Hays for the rent, except that he called once on Kennedy for it.

An important question in this case is whether or not the lease to Hays became forfeited and of no further force by reason of the failure to bore for oil or pay the monthly sum of one dollar and thirty three and a third cents in lieu thereof, and the subsequent lease by Wise to Calvert; for, if the Hays lease be still in life, Hukill can defend his possession, but, if dead, it affords him no defence. Such boring or the monthly payment of one dollar and thirty three and a third cents as its commutation, is made by the Hays lease an express condition, for non-compliance with which its life is to cease. But it is earnestly contended for the appellant that such failure does not *ipso facto* end the lease, but that demand must have been

made for the payment of said money as rent, and on failure of payment re-entry on the premises by the lessor, Wise, under the principles of common-law thus stated in Lomax, Dig. 710, 711: "The third remedy for rent is by re-entry. The condition of re-entry for rent was the remedy by the ancient law, afterwards changed into a distress. But it is yet allowable at law where the party provides it by deed; as, if a man make a feoffment, gift, or lease, reserving rent, with a condition that if the rent be behind, it shall be lawful for the feoffor, *etc.*, and his heirs into the lands to re-enter." "When the lessor is about to re-enter for non-payment of rent the common-law requires a previous demand of rent, with circumstances of great particularity. On the very day upon which the rent becomes due, at a convenient time before sunset, the lessor must make an actual demand of the exact amount of the rent due at the particular place at which the rent may be made payable by the terms of the lease ; or, if there be no place stipulated in the lease, the demand must be made at the most notorious place upon the land demised, which, if there be a dwelling-house, is the front door."

Does this law apply to this lease? It declares that failure of the lessee to commence operations, or pay one dollar and thirty three and a third cents per month in lieu of so doing, "shall work an absolute forfeiture of this lease," but contains no provision for re-entry for such omission. Where there is not only a declaration that a certain act or omission shall work a forfeiture, but also that for it the landlord may re-enter, it may plausibly be said that the landlord may or may not choose to enforce the forfeiture by re-entry, and if he elects to so enforce it, he must make such re-entry, as that is the act pointed out by the express terms of the lease as the mode of enforcement of the forfeiture; whereas, when there is no provision for re-entry, it is not required. Is then this common-law method of enforcing a forfeiture by demand and re-entry applicable to a lease which simply provides for forfeiture for breach of its covenants, but contains no clause of re-entry ? Or rather, in such case are demand and re-entry the only mode of declaring the will of the lessor to enforce the forfeiture ?

Kent, in his Commentaries, (volume 4, side p. 128) lays down the rule thus: "There is this further distinction to be noticed between a condition annexed to an estate for years and one annexed to an estate of freehold, that in the former case the estate *ipso facto* ceases as soon as the condition is broken, whereas in the latter case the breach of the condition does not cause the *cesser* of the estate without an entry or claim for that purpose. It was a rule of the common law that where an estate commenced by livery, it could not be determined before entry. When the estate has *ipso facto* ceased by the operation of the condition, it can not be revived without a new grant; but a voidable estate may be confirmed, and the condition dispensed with." This rule of the common-law is well settled. 1 Lomax, Dig. 338; 1 Minor, Inst. 229. "If the estate be an estate only for years, it is otherwise. No entry (unless it be so stipulated) is necessary to determine it, for, as a term of years may begin without ceremony, it may end without ceremony." 2 Minor, Inst. 229, citing 2 Bl. Comm. 155; 2 Thom. Co. Litt. 3, 4, 87, 88, 95–97. See Adams, Ej. 197; *Stuyvesant* v. *Davis*, 9 Paige, 431; *Parmelee* v. *Railroad Co.*, 6 N. Y. 74. The only exception to this rule was where the lease provided for re-entry, in which case there must be re-entry. 9 Paige, 431; Tayl. Landl. & Ten. § 492.

Taylor's Landlord and Tenant (section 492) states the rule as above, but says that the distinction between estates for years and freehold "has been almost, if not quite, abated by the modern decisions, which establish that the effect of a condition making a lease void upon a certain event is to make it void at the option of a lessor only, in cases where the condition is intended for his benefit, and he actually avails himself of his privilege. The English law in this respect has been generally followed in this country, and such lease is therefore held good until avoided, though the lessee is estopped to set it up against the lessor." In a note to section 492 Taylor says that the original rule, that breach of the condition in a lease for years *per se* forfeits it, prevails in Pennsylvania, but there have been contrariant decisions in New York, and cites decisions in a few other states that there must be some

declaration by the lessor of his election to forfeit. I am not aware of any decision in Virginia to tell us whether the original rule, as above stated, prevails. But let us take the law to be as Taylor states it. It is only a partial modification, or, as he states, an abatement of the original rule. He says that the effect of these later decisions is to make the lease void at the option of the lessor only, in cases where the condition is intended for his benefit, that is, that the lessor may waive the forfeiture, and, if he choose not to declare the lease forfeited, it does not lie in the mouth of the tenant, who has broken his covenant, to set up the breach of the condition as destroying the lease, but he remains liable for rent. He further says that until the lease be avoided by the landlord it continues good, though the lessee is estopped to set it up against the lessor. The lessee is in the wrong, and he can not set up the lease as continuing against the landlord who elects to insist on the forfeiture. Under the law as it had stood, so dead was the lease upon the mere breach of the condition, that the landlord could not recognize it as existing, or revive it but by a new lease, but it was dead as to both him and his tenant; but under the modification of the rule wrought by the later decisions the lease continued good until the landlord avoided it, but so far as the tenant's rights were concerned it was void, and he could not set it up against the landlord. The cause of forfeiture only renders the lease void as to the lessee, and it may be affirmed by the lessor, and the rights and obligations of both parties will continue in that case. *Clark* v. *Jones*, 1 Denio, 516. Thus no re-entry is necessary in case of a lease for years which contains a clause of forfeiture for breach of covenant but no clause of re-entry.

There is in this case another reason why no re-entry was necessary. The lease let to Hays only the right to bore for oil and reserved the use of the land to Wise for tillage; and he was in actual possession. No man can enter upon himself. A man need not make a re-entry, when he is in possession himself. 1 Smith, Lead. Cas. side p. 109, notes *Dumpor's Case; Hamilton* v. *Elliott*, 5 Serg. & R. 375 ; Co. Litt. 316b, 218b ; *Sheaffer* v. *Sheaffer*, 37 Pa. St. 525, *Alle-*

*gany Oil Co.* v. *Bradford Oil Co.,* 21 Hun. 26 (86 N. Y. 638.)
If it be said that though re-entry is not necessary, yet demand for payment is, I respond that demand is only necessary as a prerequisite to re-entry, for there must be re-entry. Wise did go to Kennedy, to whom Hays had contracted to pay, and asked him if any money had been left with him for him, but none had been left. Were any demand necessary, it might be said not without force, that this was a demand. Thus this rule as it exists today, as stated by Taylor, recognizes the power of the lessor to treat the lease as void. In what way shall he do so? Tayl. Landl. & Ten. § 488, says:

"The relation of landlord and tenant will also be dissolved when the tenant incurs a forfeiture of his lease in consequence of the breach of some condition therein contained, and the landlord re-enters upon the premises, or signifies his intention to treat the lease as void, if it is so expressed in the lease."

So, where no re-entry is required, he may signify his intention. What did Wise do to manifest his intention to avoid the lease? He refused back rent and executed a subsequent lease of the land for oil purposes to Calvert, thus in a signal and unmistakable manner declaring his purpose to end the Hays lease. The common-law rule above stated required no re-entry, and its modification, as stated by Taylor, and also the last quotations given above from Taylor, only required a declaration of the landlord to treat it as forfeited. And in the case of *Alleganey Oil Co.* v. *Bradford Oil Co., supra,* it was held by both the supreme court and the court of appeals of New York that where a lease for boring for oil provided, that, unless the lessee commence a well within nine months, the lease was "to become void and cease to be of any binding effect," and there was failure to commence, no re-entry was necessary, as the lessor was in possession; and that no notice of the landlord's intention to enforce the forfeiture was necessary; and that, even if any overt act or notice was necessary, the execution of a second lease to another party was a sufficient declaration of the landlord's intention to enforce the forfeiture. The deed of an infant is voidable, not void,

8

but requires an act to disaffirm it. A deed for the land to a second purchaser is a destruction of the first deed, and vests title in the second purchaser. *Mustard* v. *Wohlford*, 15 Gratt. 329. For these reasons I hold that by reason of the failure to either bore for oil, or to pay money in lieu thereof, under the Hays lease and the execution of the lease to Calvert, the former lease to Hays was at an end.

The case of *Bowyer* v. *Seymour*, 13 W. Va. 12, is urged upon us as decisive in favor of Hukill. The lease in that case was made for coal mining, and provided that a failure to pay money, which it stipulated was to be paid for coal, should be considered an abandonment of the lease; and it was held, that, notwithstanding non-payment of such money, the lessor must make a demand for the rent and a re-entry to make the forfeiture complete. But there is a marked line of distinction between that case and this in the fact, that, Judge Haymond says, that was a lease in fee or at least for life, and under the original common-law rule above given a freehold estate could not be forfeited for breach of a condition without demand and re-entry; whereas the lease in this case is a lease for years, which under said rule does not require re-entry. Anything said in that case as to a lease for years would be *obiter*. I think that case was decided correctly.

The reasons given above are sufficient, I think, to show that the Hays lease is forfeited, and to render it unnecessary for us to pass on the question discussed in argument as to the effect of a lease for years, for the purpose of producing petroleum oil or gas, containing provision for its forfeiture on breach of condition and a clause of re-entry, or to say whether we would approve the decision of the supreme court of Pennsylvania in *Brown* v. *Vandergrift*, 80 Pa. St. 142, so confidently relied on by appellee.

That lease provided that the lessee should begin to bore for oil in sixty days, and that if he should not commence within the time specified he should pay thirty dollars per month, until drilling should commence, and that a failure of the lessee to comply with any of its conditions and agreements should work a forfeiture of his rights, and the lessor might enter upon the land and dispose of it as if the lease

had not been made. The lessee failed to commence work or pay money, and the land-owner made a subsequent lease to other parties. The court held that the covenant of forfeiture was modified not abrogated by the clause for payment of rent; that the landlord might refuse payment of back rent and insist on the forfeiture; that time was of the essence of the contract, and equity would enforce the forfeiture. The lessor, as here, remained in possession, and it does not appear that any such thing as re-entry was insisted on, and the court below said that no demand of the commutation-money was necessary; and this was held no error. Chief Justice AGNEW in his opinion says:

"The discovery of petroleum led to new forms of leasing land. Its fugitive and wandering existence within the limits of a particular tract was uncertain, and assumed certainty only by actual development found upon experiment. The surface required was often small compared with the results, when attended with success, while these results led to great speculation by means of leases covering the lands of a neighborhood like a flight of locusts. Hence it was found necessary to guard the rights of the land-owner, as well as public interest, by numerous covenants, some of the most stringent kind, to prevent their lands from being burdened by unexecuted and profitless leases, incompatible with the right of alienation and the use of the land. Without these guards lands would be thatched over with oil leases by sub-letting, and a farm riddled with holes and bristled with derricks, or operations would be delayed so long as the speculator might find it hopeful or convenient to himself alone. Hence covenants became necessary to regulate the boring of wells, their number and time of succession, the period of commencement and of completion, and many other matters requiring special regulation. Prominent among these was the clause of forfeiture to compel performance and put an end to the lease in case of injurious delay or want of success. These leases were not valuable, except by means of development, unlike the ordinary terms for the cultivation of the soil.

If that case was correctly decided, it follows *a fortiori* that our decision upon this lease, having no clause of re-entry, is correct.

In *Munroe* v. *Armstrong*, 96 Pa. St. 307, the opinion says: "What is there in the circumstances calling for a fiction to defeat the covenant against delay in searching for or producing oil? The subject of the lease was a fluid likely to flow for a considerable distance through the crevices and loose sand where it is found. A small tract of land could be nearly or entirely drained by wells on adjoining lands, and it is common that leases contain covenants for diligent operation and for forfeiture in case of suspension. An oil lease yields nothing to the land-owner when not worked, and is an incumbrance on his land, tying his hands against selling or leasing to others; but when idle it costs the lessee nothing, and is valuable, or may prove valuable, if he can hold it awaiting developments in its vicinity."

These cases draw a distinction between oil leases and leases of other kinds. The payment of the rent or commutation money to Wise, and his consent to Hukill's taking possession under the Hays lease, could have no effect to waive the forfeiture, because such payment and taking possession occurred after the execution by Wise to Calvert of the second lease, which operated as a declaration of forfeiture, and to divest all estate under the Hays lease and invest it in Calvert; and the after act of payment did not destroy Calvert's rights.

It is said that the lease of the plaintiffs is itself forfeited because of non-payment and failure to bore for oil within the time specified in it; but that lease is dated 11th July, 1888, and provides for boring a well within six months, and, on failure, then payment of fifty cents per acre, payable within six months "from the time of completing such well." A tender of seven dollars and fifty cents was made 10th July, again on 11th July, 1889, and refused by Wise, and a tender of fifteen dollars was made 10th January, 1890, and refused. The only acts of disaffirmance by Wise of said lease were such refusals and assent to the entry under the Hays lease. Forfeiture of this lease could not revest title under the Hays lease, though it might show that the plaintiffs had no title on which to maintain their action; but there was no forfeiture, as the tenders saved it. The contention that chapter 93, Code 1887, provides the only

means of enforcing a forfeiture for non-payment of rent or breach of condition, is not tenable in my opinion. I think the action of ejectment therein provided for is remedial, and a cumulative remedy to dispense with demand and re-entry, and that it does not destroy the common-law mode of demand and re-entry. But, however that may be, it applies only where there is necessity to make demand and re-entry; and in this case, for reasons above given, there was no duty on the lessor to re-enter. I think the action of unlawful entry lies. It is true, it is designed to protect the actual possession. It applies when a tenant holds over after his right has expired. After a declaration of forfeiture by Wise he could have maintained such an action against Hukill, because he would have held after his right expired; and, he having let to Calvert the right to possession for oil purposes, I do not see why the action does not lie for the plaintiff.

It seems hardly necessary to say that the contention, that plaintiffs are estopped by standing by and seeing Hukill spend money in developing oil without setting up claim, is not good. Hukill began operations early in May, 1889, and it is admitted that on 5th July Guffey and Murphy sent him a formal notice in writing that they had the sole right to drill for oil under their lease, telling him the very page and book where he would find it on record, and warning him not to drill. He did not produce oil until November.

The evidence offered by defendant of the amount of money expended by him in developing oil was properly rejected, as the question was one of right between the parties under their respective claims, and the proposed evidence was immaterial. As to the complaint that plaintiffs were allowed to give evidence that when they acquired their right they had no notice of defendant's claim, I think it immaterial. If the Hays lease had become forfeited, there was no right under it of which they could have notice. *Land Co.* v. *Laidley*, 32 W. Va. 134 (9 S. E. Rep. 61.) As to the exclusion as evidence of the deed of 14th of May, 1889, from Wise to Hukill, conveying absolutely all the oil and gas under said tract, it could not affect the right of plaintiffs under the Rezin Calvert lease, made and recorded

long before its date, and was irrelevant to the case. I am of opinion that the evidence sustained the plaintiff's case, and that the court below properly refused to exclude their evidence, and rendered judgment for them. Judgment affirmed.

AFFIRMED.

# WHEELING.

