FOSTER et al. v. ELK FORK OIL & GAS CO. et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

No. 262.

1. MINES AND MINERALS—CONSTRUCTION OF OIL LEASE—ABANDONMENT.

An oil and gas lease provided that the lessee should pay as rental a share of all oil produced, and a stipulated sum for each gas well the product of which was utilized. Its term was 10 years, and as much longer as oil or gas was produced in paying quantities. It bound the lessee to complete one well in a district named within one year, or pay a fixed sum per annum thereafter until such well should be completed. The lessee completed a well within the year, which was unproductive, and then ceased further operations. *Held*, that the lease necessarily contemplated, as the sole consideration to the lessor, the development of the leased property, and that by ceasing efforts to that end for a number of years the lessee abandoned the lease, and lost all rights thereunder.

2. SAME—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The decisions of the courts of a state as to the construction and effect of mining leases therein establish a rule of property which will be recognized and followed by the federal courts.[1]

Appeal from the Circuit Court of the United States for the District of West Virginia.

[1] As to the following of state decisions establishing rules of property by the federal courts, see section 9 of note to Wilson v. Perrin, 11 C. C. A. 84, and section 6 of the supplementary note by the same title to Hill v. Hite, 29 C. C. A. 562.

This was a suit in equity by the Elk Fork Oil & Gas Company and others against George E. Foster and others to enjoin interference by defendants with the operations of complainants under certain oil leases. From a decree for complainants, defendants appeal.

A. Leo Weil (Caldwell & Caldwell, on the brief), for appellants.

W. P. Hubbard and Thomas P. Jacobs (David Sterrett, on the brief), for appellees.

Before SIMONTON, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the district of West Virginia. The pleadings are voluminous. They consist of an original, an amended, and a supplemental bill by the Elk Fork Oil & Gas Company et al., the appellees, answers of appellants J. M. Guffey, E. H. Jennings et al., cross bill of J. M. Guffey, E. H. Jennings et al., answers thereto, original and amended bill by George E. Foster, treated as a cross bill, and answers thereto. The conclusion reached does not require any further discussion of the pleadings. The object of the writ was by injunction to protect the complainants in the possession of certain oil wells which they had drilled and were operating under recent leases from the landowners, and to restrain the defendants from asserting rights which the defendants claimed under prior leases from the landowners to William Johnston, which the complainants charged had been abandoned, and were of no validity, for the reasons that from 1889 to the institution of the suit, in March, 1897, neither Johnston nor his assignees had ever entered upon or made any search for oil or gas on any of the tracts in possession of the complainants. One William Johnston, in the year 1889, procured from a large number of farmers about 175 leases of land lying in four districts in Tyler county, W. Va., covering about 20,000 acres. The districts are named "Ellsworth," "Lincoln," "Union," and "Meade." Each contract or lease was several, covering separate tracts of land; the parties stipulating and contracting each for himself. They were all in the same form, containing the same provisions, covenants, and stipulations. Each of them, as will be seen, provided for the digging within a year of one well in the district of Ellsworth, Lincoln, Union, or Meade. Within the year, Johnston dug a well within one of these districts to a great depth, some 2,000 feet. It proved to be a dry well. It produced neither oil nor gas. After that effort, no well whatever was dug within either or any of these four districts under any of these contracts with Johnston. Wells were dug within these districts, under new contracts, by Johnston or his assignees. Wells were dug in this county, outside of these districts, by Johnston. The appellees have acquired, under recent leases, the right of taking oil and gas from some of the lands mentioned in the old Johnston leases. The issues in the case grew out of the conflicting claims of appellees, who hold under recent leases, and appellants, who hold under Johnston. The question in the case is, are these Johnston leases of 1889 valid and subsisting, or have he and those under him lost all right thereunder?

The court below held that the leases were no longer valid and subsisting, and that neither Johnston nor those claiming under him had any rights thereunder. In its decree it put its conclusion upon the ground of abandonment on the part of Johnston. An appeal was taken and allowed, and the questions are here on assignments of error.

The contract to be construed was entered into by the lessor in consideration of the covenants and agreements hereinafter mentioned, and for the purpose and with the exclusive right in the lessee of drilling and operating for petroleum and gas. The term is for 10 years, and as much longer as oil or gas is found in paying quantities. The covenants and agreements, the consideration of the lease, are: The lessee to give to the lessor the full equal one-eighth of all the petroleum oil obtained or produced on the leased premises, and to deliver the same in tanks or pipe lines to the credit of the lessor. If gas is obtained in sufficient quantities to utilize, the consideration in full to the lessor shall be $100 per annum for each gas well drilled on the premises, if there be sufficient pressure to guaranty the laying of a pipe line to convey to market, payable 90 days after the line is laid. Then follows a grant by the lessor to the lessee of the use of water from the premises leased necessary to operation thereon, the right of way over and across the premises to the place of operating, with the exclusive right to lay pipes and convey oil and gas from the letten premises as well as the adjoining farms, and the right to remove any machinery or fixtures placed by the lessee on the premises. All damages to the growing crop by laying of pipes to be paid by lessee. Ten acres around the buildings are not to be operated by lessee, unless the lessor decides to have same drilled. The lessor to have the use of gas for domestic purposes, after the boilers on the premises are supplied. Every one of these covenants, the consideration for the lease, evidently and clearly contemplates active operation upon the demised premises. The lease contains this provision, fixing the time when the operation must begin: "One well to be completed within one year, in Ellsworth, Meade, Lincoln, or Union district from the date hereof, unavoidable accidents excepted." In case of failure to complete operations on a well within such time, the lessee agrees to pay the lessor for such delay 10 cents per acre per annum after the time for completing the well as specified; the lessor agreeing to accept this sum as full payment for the yearly delay, until one well shall be completed. The failure to complete one well, or to make the payment as stipulated, will avoid the lease. The consideration for this lease is the covenants; and these covenants, as has been seen, contemplate active operations on the demised premises, the lessor looking for his reward to the result of these operations, and dependent upon them. The clause last quoted fixes the time within which active operations must commence, and sets forth the penalty for failure so to begin. If the well has been begun and is completed within a year, no money whatever is paid. If not so completed, then the money payment ceases when the well has been completed. If no well is dug at all, money is paid, not in consideration of the demise, but as penalty for not digging the well. Note the language, "one well." The digging of one well is a guaranty that the operations, the consideration for the de-

mise, have begun. The agreement to dig one well within one year secures the prompt beginning of these operations. The completion of the well saves the penalty. It does not amount to a fulfillment of the covenants. The consideration, therefore, for this lease was the prospective rents and royalties the lessor would enjoy if the lessee, by diligent search, could find oil and gas in paying quantities. If the lease failed to bind the lessee to diligent search for oil or gas, it was without consideration, binding on neither party, and voidable at the pleasure of either. Cowan v. Iron Co., 83 Va. 547, 3 S. E. 120; Petroleum Co. v. Coal, Coke & Mfg. Co., 89 Tenn. 381, 18 S. W. 65. See Ray v. Gas Co., 138 Pa. St. 576, 20 Atl. 1065. In this last quoted case, the supreme court of Pennsylvania says:

"The clear purpose of the lessor was to have his lands operated for oil and gas, and the condition was inserted for his benefit. Whilst the obligation on part of the lessee to operate is not expressed in so many words, it arises by necessary implication. The lease was for the expressed purpose of drilling and boring for oil or gas; the lessor, in a certain event, to receive a share of the production as a royalty or rent, and, in another event, to be paid $500 per annum for each gas well, the product of which was conducted from the land for consumption. If a farm is leased for farming purposes, the lessee to deliver to the lessor a share of the crops in the nature of rent, it would be absurd to say, because there was no expressed engagement to farm, that the lessee was under no obligation to cultivate the land. An engagement to farm in a proper manner, and to a reasonable extent, is necessarily implied. The clear purpose of the parties to this lease was to have the lands developed, and the half-yearly payments, and the other sums stipulated, were intended not only to spur the operator, but to compensate Ray for the operator's delay or default."

The contract provides that one well shall be dug within a specified time. This phrase, "one well," is capable of one of two constructions. It may be used in the sense of "but one well." If it be used in this sense, as the well has been dug, and proved to be dry, the performance of the covenants in the contract on the part of the lessee has become impossible. He can dig no more wells, and can never supply the petroleum or the oil. Steelsmith v. Gartlan (W. Va.) 29 S. E. 978. "Such a lease must be construed as a whole, and, if there is no provision therein contained requiring the boring of another well after the first unsuccessful attempt is completed and abandoned, the lease becomes invalid, and of no binding force in any of its provisions." The phrase, however, may be construed to use one well in the sense of a pioneer in a series. If it be used in this sense, the lessee having dug the one well, and then having ceased to dig any other well within the four districts, would seem to have abandoned all effort towards the performance of the covenants which were the consideration of the contract, and so may be held to have abandoned the contract itself.

The leases, as has been said, in the four districts, all had the same provisions. The lessee bored one well. It proved a failure in every other respect except that it saved the penalty, having been dug within one year. The well itself was dry. This is the only work done by the lessee on any of the land covered by these leases. No further effort was made. He failed to establish his rights. His inaction may well be construed an abandonment of these rights under his leases.

"A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. A lease of a right to mine for oil, etc., stands on different ground. The title is inchoate, and for purposes of exploration only until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the successful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of the contract." Crawford v. Ritchey (W. Va.) 27 S. E. 220. In this case the lease was for 20 years for the sole and only purpose of drilling and operating for petroleum oil and gas. The same doctrine is reaffirmed by the same court very recently in Steelsmith v. Gartlan, 29 S. E. 978. Both of them are in full accord with the supreme court of Pennsylvania. Oil Co. v. Fretts, 25 Atl. 732. The contract we are construing is a contract made and to be performed in West Virginia. It is a contract relating to land in that state. The cases quoted lay down a rule of property, stating the controlling doctrine peculiar to mining leases in that state. The federal courts recognize and follow the decisions of courts of last resort in the state.

It is earnestly contended that the lessee was not obliged to bore a well on every parcel included in the four districts. We do not say that he was obliged to do this. Perhaps, when he found by his experiment, that he had gone over 2,000 feet, and found nothing, he was under no obligation to continue his explorations. Glasgow v. Charties Oil Co., 152 Pa. St. 48, 25 Atl. 232. But we are of the opinion that, when he tried once, and failed, and after a reasonable time did not try again, he failed to establish his interest in this land, and lost all his rights under the contract. As is said by the supreme court of West Virginia in Steelsmith v. Gartlan, supra:

"The demise for the purpose of operating for oil and gas for the period of five years is dependent on the discovery of oil or gas in the search provided for; and, if such search is unsuccessful, the demise fails therewith, as such discovery is a condition precedent to the continuance or vesting of the demise. The lessee's title, being inchoate and contingent, both as to the five-years limit and term thereafter on the finding of oil and gas in paying quantities, did not become vested by reason of his putting down a nonproductive well. This gave him no new or more extensive rights than he enjoyed before, but in fact destroyed all his rights under the lease."

The decree of the circuit court is affirmed, with costs.