GADBURY ET AL. v. OHIO & INDIANA CONSOLIDATED NATURAL & ILLUMINATING GAS COMPANY.

[No. 20,125.　Filed May 14, 1903.　Rehearing denied January 14, 1904.]

GAS AND OIL LEASE.—*Condition Subsequent.*—*Forfeiture.*—Plaintiffs by written lease granted to defendant's assignor all the oil and gas under certain described premises together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water, reserving to himself one-sixth of all oil produced and saved from the premises. It was further provided that if gas only was found the lessee was to pay $100 each year for the product of each well while the same was being used off the premises, lessor to have gas free for domestic purposes, and in case no well was completed within forty days from date of lease, the lease should become null and void, unless the lessee should pay lessor $1 a day after such completion was delayed. The lessee completed a well in which gas was found in paying quantities, and closed and anchored same to prevent gas from escaping therefrom, assigned the lease to defendant, and no oil nor gas was produced from the premises, and no payment made to plaintiff for the privilege of holding the premises. *Held,* that the duty to develop the property upon the discovery of oil or gas in paying quantities was a condition subsequent. *pp. 10–16.*

SAME.—*Forfeiture.*—The failure of the assignee of a gas and oil lease for two years after gas was found in paying quantities to develop the property, *prima facie* authorized the lessor, who was to be paid $100 a year for the product of each well, without demand, to treat the grant as abandoned. *p. 16.*

From Blackford Circuit Court; *E. C. Vaughn,* Judge.

Suit by Riley R. Gadbury and another against the Ohio & Indiana Consolidated Natural and Illuminating Gas Company to quiet title. From a judgment for defendant, plaintiffs appeal. Transferred from Appellate Court, under subdivision 2, §1337j Burns 1901. *Reversed.*

*J. A. Hindman* and *M. M. Powell*, for appellants.

*W. W. Orr, S. W. Cantwell* and *L. B. Simmons*, for appellee.

GILLETT, J.—By their second paragraph of complaint, appellants seek to quiet their title to a certain tract of real estate which they allege that they own in fee simple. The cloud that they seek to have removed was occasioned by the execution of a written contract by them and appellee's grantor, one Andrews, which contract is in the words and figures following: "In consideration of the sum of $1, the receipt of which is hereby acknowledged, we, R. R. Gadbury and J. A. Gadbury, first parties, hereby grant unto J. S. Andrews, second party, his successors and assigns, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas, or water, and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil, gas, or water from said premises, excepting and reserving, however, to the first parties, the one-sixth part of all oil produced and saved from said premises to be delivered in the pipe-line with which second party may connect his wells, namely: All that certain lot of land situate in the township of Licking, county of Blackford, in the State of Indiana, bound and described as follows, to wit: The east half of the northwest quarter of section thirty-two, township twenty-three north, range ten east, containing eighty acres, more or less. To have and to hold the above premises on the following conditions: If gas only is found, second party agrees to pay $100 each year for the product of each well while the same is being used off the premises, and the first party to have gas free of cost for domestic purposes. Whenever first party shall request it, second party shall bury all oil and gas lines and pay all damages done to growing crops by reason of burying and removing said pipe-lines. No wells shall be

drilled nearer than 200 feet to the house or barn on said premises, and no well shall occupy more than one acre. In case no well is completed within forty days from this date, then this lease shall become null and void, unless second party shall pay to first parties $1 per day thereafter such completion is delayed. The second party shall have the right to use sufficient gas, oil, or water to run all necessary machinery for operating said wells, and also the right to remove all its property at any time. It is understood between the parties to this agreement that all the conditions between the parties hereto shall extend to their heirs, executors, and assigns. In witness whereof, the parties hereto have hereunto set their hands and seals this 1st day of December, A. D. 1897. [Signed.] R. R. Gadbury, J. A. Gadbury, J. S. Andrews."

Said paragraph of complaint further alleges that said contract was assigned by said Andrews to said defendant on the 6th day of January, 1900; that there was no consideration for the execution of said contract by plaintiffs, except the income, rents, profits, and royalties referred to in said instrument; that said Andrews completed a well on said premises on the 19th day of February, 1898, and paid plaintiffs the sum of $1 per day during the time that completion of said well was delayed after forty days from the execution of said contract down to the date last aforesaid; that, by the construction of said well, gas was found on said premises in large and paying quantities; that, notwithstanding the discovery of said gas as aforesaid, said Andrews, immediately upon the completion of said well, closed and anchored the same, so as to prevent any gas from escaping therefrom, and neither said Andrews nor said defendant, nor any other person or corporation, has produced any gas or oil on or from said premises, nor have they, or either of them, used or transported any gas whatever from said premises; that neither said Andrews nor said defendant has ever paid the plaintiffs

anything for the product of said wells, or for the privilege of holding said premises after the completion of said well, and that the defendant since the date of said assignment has held, and still claims the right to hold, said premises without developing the same, and without producing any oil or gas therefrom, and without paying the plaintiffs any consideration whatever for the privilege of so doing, and without paying the plaintiffs anything whatever for the gas and oil which could be produced upon said premises; that during all of the time since the execution of said lease gas and oil have existed in and under said premises in large and paying quantities and still continue so to exist, all of which was known to said Andrews and said defendant during all the time since the execution of said lease. It is further alleged in said paragraph of complaint that said Andrews and said defendant failed, neglected, and refused to give or furnish plaintiffs, or either of them, with any gas for domestic use; that on the 28th day of December, 1899, plaintiffs declared said contract forfeited, and all rights thereunder terminated, by reason of a failure to develop said premises and to produce gas or oil therefrom, and that plaintiffs did then and there take possession of said well, and connect the same with their dwelling-house on said premises, and that said contract is a cloud upon plaintiffs' title. Prayer, that said title be quieted. A demurrer was sustained to said paragraph of complaint, an exception was duly reserved, and from a final judgment that appellants take nothing, they appeal, and assign error based on said ruling.

The grant in question, upon its face, appears to be a mere option to the grantee. Every express undertaking upon his part is subsidiary to the exercise of the option to explore and develop the real estate. The question arises, however, whether obligations to explore and develop the property

may not be implied, and whether such undertakings, if implied, are not such an essential part of the contract as to be treated as conditions.    An implied condition may be inseparably annexed to a grant, from its essence and constitution, although no condition be expressed in words.    2 Blackstone's Comm., *152; *Petroleum Co.* v. *Coal, etc., Mfg. Co.*, 89 Tenn. 381.

In determining whether a condition is to be implied it is important to note that the substantial consideration which moves a grantor to execute such a grant is the hope of profits or royalties if oil or gas is discovered.    Even if the grantee in this case had paid the stated consideration of $1—a technically valuable consideration—yet we must construe the instrument with the fact in view that a more substantial reason or reasons prompted the making of the grant.    *Huggins* v. *Daley*, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Federal Oil Co.* v. *Western Oil Co.*, 112 Fed. 373.    In an ordinary agricultural lease, where the rent is payable in kind, it would, of course, be implied that the tenant would farm the land; and the requirement is implied that lessees in mineral leases, upon royalties, will develop the property if exploration warrants it, where the minerals are stable, although the only result of a delay in operating would be to postpone the receipt of profits or royalties.    *Island Coal Co.* v. *Combs*, 152 Ind. 379; *McKnight* v. *Natural Gas Co.*, 146 Pa. St. 185, 23 Atl. 164, 28 Am. St. 790.    If a duty to operate is to be implied in such cases, there is much more reason for the implication in a grant of the right to operate for oil and gas upon a royalty, owing to the migratory habit of the fluids.    "Oil leases," it was declared in *McKnight* v. *Natural Gas Co., supra*, "must be construed with reference to the known characteristics of the business."    As said in another Pennsylvania case:    "The nature of oil and gas, the pressure of the superincumbent rocks, and the vagrant habit of both,

fluids under the influence of this pressure, enter into the contemplation of both parties to such an agreement." *Kleppner* v. *Lemon*, 176 Pa. St. 502, 35 Atl. 109.

In grants of the character in question, the title is inchoate, and for the purpose of exploration only, until oil or gas is found in quantities warranting operation; and while the courts manifest a disposition to protect the grantee at this stage by treating his interest as no longer postponed to the happening of a condition precedent, yet it is thoroughly settled that he can not omit to develop the property and hold the grant for speculative purposes purely. *Parish Fork Oil Co.* v. *Bridgewater Gas Co.*, 51 W. Va. 583, 42 S. E. 655; *Bluestone Coal Co.* v. *Bell*, 38 W. Va. 297, 18 S. E. 493; *Guffy* v. *Hukill*, 34 W. Va. 49, 11 S. E. 754, 8 L. R. A. 759, 26 Am. St. 901; *Ray* v. *Natural Gas Co.*, 138 Pa. St. 576, 20 Atl. 1065, 12 L. R. A. 290, 21 Am. St. 922; *Venture Oil Co.* v. *Fretts*, 152 Pa. St. 451, 25 Atl. 732; *Kleppner* v. *Lemon, supra; Huggins* v. *Daley, supra; Federal Oil Co.* v. *Western Oil Co., supra; Hawkins* v. *Pepper*, 117 N. C. 407, 23 S. E. 434.

The duty to develop the property upon the discovery of oil or gas in paying quantities is not to be regarded as a mere implied covenant, but, in a case like this, where practically the whole consideration must depend upon the implied undertaking, is to be treated as a condition subsequent.

Conditions subsequent are not ordinarily favored, "because," as declared by Professor Kent, "they tend to destroy estates; and the rigorous exaction of them is a species of *summum jus*, and in many cases hardly reconcilable with conscience." 4 Kent's Comm., \*129. Accordingly, it has been declared in unrestricted terms that equity will not lend its aid to enforce a forfeiture. Where there has been a cause of forfeiture, followed by an entry upon the part of the grantor, so that the title has been lost, it is not strictly the enforcing of a forfeiture for a court of

equity to decree a cancelation of the instrument. *McClellan* v. *Coffin*, 93 Ind. 456; *Birmingham* v. *Lesan*, 77 Me. 494, 1 Atl. 151. But even in a case of this kind, where the circumstances do not permit of an entry, the forfeiture may be in effect enforced by suit in equity. Forfeitures are usually against conscience and without equity, and it is for these reasons that courts of chancery ordinarily refuse relief in such cases, but an exception to the rule must exist where it is against equity to permit the defendant longer to assert his title. *Leach* v. *Leach*, 4 Ind. 628, 58 Am. Dec. 642; *McClellan* v. *Coffin*, *supra*; *Richter* v. *Richter*, 111 Ind: 456. In the case last cited a stipulation was treated as a condition subsequent, rather than a covenant, and the grantor's title quieted because of the lack of another remedy. In the case in hand specific performance could not be enforced *(Louisville, etc., R. Co.* v. *Bodenschatz*, 141 Ind. 251)*; and the completion of the first well having cut off the liquidated damages of $1 per day for noncompletion, and as no gas has been disposed of off the premises, there remains no measure of damages, for while the damages would be substantial they would be speculative. *Foster* v. *Elk Fork, etc., Co.*, 32 C. C. A. 560, 90 Fed. 178; *Federal Oil Co.* v. *Western Oil Co.*, *supra*. The lack of any other remedy, and the danger that the gas might be withdrawn through wells on other lands, makes a case of this kind appeal to the conscience of the chancellor, and calls upon him to enforce the·incurred forfeiture by removing the cloud from the title. In *Munroe* v. *Armstrong*, 96 Pa. St. 307, it was said concerning a gas and oil lease: "Forfeiture for non-development or delay, is essential to private and public interests in relation to the use and alienation of property. In such cases as this equity follows the law. In general equity abhors a forfeiture, but not when it works equity and protects a landowner from the laches of a lessee whose lease is of no value till developed."

The next question that arises is whether the paragraph of complaint in question sufficiently shows that the interest conveyed by appellants to said grantee Andrews has been forfeited. An estate is not *per se* forfeited by the breach of a condition subsequent. *Cross* v. *Carson,* 8 Blackf. 138, 44 Am. Dec. 742; *Thompson* v. *Thompson,* 9 Ind. 323, 68 Am. Dec. 638. It was a rule of the common law that where an estate commenced by livery, it could not be determined before entry. 4 Kent's Comm., *128. In Indiana a demand of possession, based on the breach, followed by a refusal, is equivalent to an entry on the premises. *Clark* v. *Holton,* 57 Ind. 564; *Indianapolis, etc., R. Co.* v. *Hood,* 66 Ind. 580; *Cory* v. *Cory,* 86 Ind. 567; *Preston* v. *Bosworth,* 153 Ind. 458, 74 Am. St. 313. Without determining whether this rule as to an entry should be applied to the grant of an easement or of a chattel interest (*Roberts* v. *Davey,* 1 Nev. & Man. 443), or whether it is enough for the grantor in such case to evince unequivocally his election, we think that it may be affirmed in this case that the forfeiture is sufficiently shown. Here the grant did not dispossess the appellants, and they could not enter upon themselves, and, besides, the failure for so long a time, without apparent excuse, to develop the property, *prima facie* authorized appellants, without demand, to treat the grant as abandoned. See *Richter* v. *Richter,* 111 Ind. 456; *Cree* v. *Sherfy,* 138 Ind. 354; *Island Coal Co.* v. *Combs,* 152 Ind. 379; *Huggins* v. *Daley,* 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Guffy* v. *Hukill,* 34 W. Va. 49, 11 S. E. 754, 26 Am. St. 901, 8 L. R. A. 759. As to election by suit, see *Carnahan* v. *Tousey,* 93 Ind. 561.

The facts stated in the second paragraph of complaint, which stand as admitted by the demurrer, were such as to require the court below to aid appellants, by means of its jurisdiction, to decree cancelation and to remove clouds from titles.

The judgment is reversed, with an instruction to the court below to overrule the demurrer to the second paragraph of complaint.