## STAHL ET AL. *v.* ILLINOIS OIL COMPANY.

[No. 6,591.   Filed January 27, 1910.]

1.  CONTRACTS.—*Covenants.—Gas and Oil.—"Lease."*—A contract for the sinking of gas and oil wells is not strictly a "lease," as that word is ordinarily used.  p. 213.

2.  CONTRACTS.—*Construction.—Gas and Oil.*—In construing contracts for the sinking of oil and gas wells the courts will reject contradictory provisions and determine the true meaning thereof from the general scope and intent of the contract.  p. 213.

3.  CONTRACTS.—*Construction.—Conduct of Parties.*—In determining the meaning of a contract the courts may consider the acts of the parties thereunder.  p. 214.

4.  PLEADING.—*Presumptions.*—The presumption is that a pleading contains all of the facts favorable to the pleader.  p. 214.

5.  CONTRACTS.—*Consideration.—Gas and Oil.—Royalties.—Penalties.*—The real consideration for a contract giving to the owner of land a royalty in the oil and gas produced therefrom and a monthly rental for delay in the completion of wells, is the royalty, the rentals for delay being incidental.  p. 214.

6.  CONTRACTS.—*Oil and Gas.—Royalties.—Rentals.*—A contract giving to the owner of a seventy-acre tract of land a royalty of one-sixth of all the gas and oil produced therefrom, and providing that "each location shall consist of ten acres, more or less, and each well shall be due in sixty days from the completion of the last one," that no well shall occupy more than one acre, and that "each well shall be due in sixty days from the completion of the last one, or a monthly rental of $5 [shall be paid] for each well due" may be construed to give such rental for delay only in case of the first seven wells.  p. 215.

From Adams Circuit Court; *Richard K. Erwin,* Judge.

Action by Samuel Stahl and others against the Illinois Oil Company. From a judgment for defendant, plaintiffs appeal. *Affirmed.*

*James T. Merryman* and *Jesse C. Sutton,* for appellants.
*Simmons & Dailey,* for appellee.

MYERS, C. J.—Appellants brought this action against appellee, to enforce the payment of certain alleged cash rentals claimed to be due under a certain gas and oil contract.

A demurrer to the complaint for want of facts was sustained, and this ruling is here assigned as error.

The contract is made a part of the complaint by exhibit, and is dated April 15, 1895. It grants unto the lessee all the gas and oil in and under certain real estate, described, with the exclusive right to enter thereon at all times for the purpose of drilling and operating for oil or gas, etc. It also provides that "unless second party shall commence and complete a well within forty days from date thereof or pay a monthly rental of $5 until said well is completed, this grant shall become null and void. * * * It is further agreed that the party of the second part shall commence to drill first well in twenty days from date. Each well shall be due in sixty days from the completion of the last one or a monthly rental of $5 for each well due. Each location shall consist of ten acres more or less and each well shall be due in sixty days from the completion of the last one. It is further agreed that no well shall occupy more than one acre."

The complaint shows that the contract covered seventy acres of land, more or less, in Adams county; that on the date of the contract the land was undeveloped for oil or gas; that, according to the terms of the contract, seven wells were completed on the land; that thereafter three additional wells were completed, but that more than sixty days elapsed between the completion of each of the additional wells; that the last three wells were sunk by appellee without objection or protest from anyone; that there is no express limitation

in the contract as to the number of wells over seven; that appellants by this action sought to collect cash monthly rentals for the time over sixty days between the completion of each of the last three wells.

Appellants' theory is that for the time exceeding sixty days between the completion of wells No. 7 and No. 8, and so on up to the completion of well No. 10, appellee was liable for a monthly rental of $5. While appellee insists that having completed well No. 7 without any default, the sixty-day limit did not apply to the last three wells.

The instrument which was the foundation of this action is not a lease, as the word "lease" is usually interpreted

1. (*Hancock* v. *Diamond Plate Glass Co.* [1904], 162 Ind. 146; *New American Oil, etc., Co.* v. *Troyer* [1906], 166 Ind. 402), although similar instruments have been so called. It is a covenant by the owner of land to another person, whereby the latter has the exclusive right to enter upon and explore the land for gas and oil, and prosecute such business, occupying only such portion necessarily required for that purpose, which in the instrument or contract before us is fixed at not to exceed one acre for each well.

It has been said that gas and oil contracts, such as the one before us, belong to a class of their own, and that courts will

2. "look critically into such instruments for the real intention of the parties, because it so frequently happens that they cannot, on account of incongruous provisions, be enforced according to the strict letter of the contract." *Ohio Oil Co.* v. *Detamore* (1905), 165 Ind. 243.

While it is true that the provisions in this class of contracts, as a rule, are ambiguous, indefinite and uncertain, it is also true that the parties are to be limited to the contract actually made. And for the purpose of ascertaining the true meaning of the language employed courts "will look to the nature of the instrument and the conditions under which it was made, the situation of the parties, the nature of their

business, and the interests to be protected, not for the purpose of applying it, but for the purpose of effectuating their intention." *Merica* v. *Burget* (1905), 36 Ind. App. 453, and cases cited. See, also, *Erie Crawford Oil Co.* v. *Meeks* (1907), 40 Ind. App. 156.

In the case of *Ohio Oil Co.* v. *Detamore, supra,* it is said: "The mutual understanding and intent of the parties, as to the purpose, scope and ultimate object to be attained by the contract, that inspired and accompanied its execution, is controlling, and must be determined, not by detached provisions, but by viewing the instrument as a whole."

Another rule of construction, applicable to ambiguous and uncertain provisions supposed to be expressive of the contract as actually agreed upon, requires the court to 3. take into consideration the acts and conduct of the parties in relation to the contract under consideration. *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331; *Scott* v. *LaFayette Gas Co.* (1908), 42 Ind. App. 614.

It must also be remembered that all well-pleaded facts are presumed to be true, as against a demurrer, and any omitted facts are to be considered as adverse to the 4. pleader, "under the general presumption that a party will set forth all the facts favorable to his case." *Cushman* v. *Cloverland Coal, etc., Co.* (1908), 170 Ind. 402, 16 L. R. A. (N. S.) 1078, 127 Am. St. 391.

The general purport of the contract here exhibited is clearly expressive of the purpose of the parties. It was effective to give one not the owner of the land therein 5. described the exclusive right to enter thereon, and, by means of wells, to seek, acquire and reduce to actual possession and control the natural gas or oil which might thus be obtained. For this privilege the covenantee agreed to pay the covenantors for one-sixth of all oil produced on the land. This latter provision was no doubt the real incentive on the part of the owners for the execution of the contract, and not the stated cash monthly rental, for it has

been said "that the substantial consideration which moves a grantor to execute such a grant is the hope of profits or royalties if oil or gas is discovered." *Gadbury* v. *Ohio, etc., Gas Co.* (1904), 162 Ind. 9, 62 L. R. A. 895.

Only by the sinking of wells could the land be explored and the ultimate object of the contract be attained. The extent of the exploration of the land for oil and gas, which is the essence of such contracts (*Dill* v. *Fraze* [1907], 169 Ind. 53), depends upon the number of wells completed.

That was a subject about which the parties had a right to agree, and furnished a reason for incorporating into the contract the provision that "each location shall consist of ten acres, more or less." This provision, together with the fact that the entire tract contained seventy acres, more or less, strongly implies that seven wells would satisfy the terms of the contract for the sinking of wells, but not necessarily the maximum number of wells which might be put down. In the light of all the facts before us, the contract will be so construed.

Judgment affirmed.