## ZEIGLER *v.* DAILEY ET AL.

[No. 5,520. Filed January 31, 1906.]

LANDLORD AND TENANT.—*Gas-and-Oil Leases.—Contracts.—Termination.*—Where the landlord contracted with lessee that if no gas or oil well was completed in thirty days the grant should be void unless the lessee should pay $143, quarterly in advance, for each year of delay, and such lessee within the thirty days paid the lessor for a certain extension of time during which he sank a well but found nothing, and removed most of the machinery, such lease became void, and the fact that the lessee entered upon such land three years later and, without the payment of such rents, or any other agreement, sank a paying well, did not revive such lease.

From Blackford Circuit Court; *John M. Smith,* Special Judge.

Suit by Michael Dailey and others against Henry C. Zeigler. From a decree for plaintiffs, defendant appeals. *Affirmed.*

*Dailey, Simmons & Dailey,* for appellant.

*Levi Mock, John Mock, George Mock* and *J. A. Hindman,* for appellees.

ROBINSON, J.—On April 26, 1895, Gideon Wolf owned certain land and executed to Henry C. Zeigler the following lease:

"In consideration of the sum of $1, the receipt of which is hereby acknowledged, Gideon Wolf, of Mansfield, Piatt county, Illinois, of the first part, hereby grants unto H. C. Zeigler, second party, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas, to erect and maintain all buildings and structures, and lay all pipes necessary for the production and transportation of oil or gas. The first party shall have one-eighth part of all oil produced and saved from said premises, to be delivered in the pipe-line with which second party may connect his wells, namely: All that certain lot of land situate in township of Chester, county of Wells, in the State of Indiana, described as follows, to wit: [describing the 143 acres of land]. To have and hold the above premises on the following conditions: If gas only is found, in sufficient quantities to transport, second party agrees to pay first party $100 per year for the product of each and every well so transported, and the first party to have gas free of cost to heat the stoves and light the jets in dwelling-house. Second party shall bury all oil and gas lines, where likely to interfere with cultivation, otherwise not, and pay all damages done to growing crops by reason of burying and removing said pipe-lines. In case no well is completed within thirty days from this date, then this grant shall become null and void unless second party shall thereafter pay at the rate of $143 annually for each year such completion is delayed. A deposit to the credit of first party in any bank doing business in Montpelier, Indiana, will be good and sufficient payment for any money falling due on this grant. Payable quarterly in advance, namely, $35.75 every three months. The second party shall have the right to use sufficient gas, oil and water to run all machinery for operating said wells, also the right to remove all its property at any time. It is understood

between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, successors and assigns."

Zeigler did not complete a well within the thirty days, but paid Wolf $107.25 for an extension of time, until February 26, 1896, for completing the well. In December, 1895, a well was drilled, but neither gas nor oil was found. The casing was withdrawn from the well, and removed from the premises, leaving the derrick, and also the drive pipe in the well. Wolf died July 16, 1896, testate, his will was probated July 21, 1896, in Piatt county, Illinois, and letters testamentary were issued to John Wolf and George T. Warren, named as executors in the will, who continued to act as such after October 18, 1899. On September 17, 1896, the will was admitted to probate in Wells county, Indiana. Afterward, the executors, acting under the will, caused the real estate in question to be appraised in February, 1899, and duly advertised the land and sold the same to appellees. Zeigler never paid any sum whatever as rental or otherwise under the lease except the heretofore-mentioned sum of $107.25, and never produced any oil 'or gas or any mineral under the lease from the well drilled in 1895, but the well was wholly worthless and abandoned by Zeigler as wholly worthless. Zeigler never attempted to put down any other well on the premises or under the lease prior to the summer of 1899, and never entered on the premises after the abandonment of the first well nor attempted to drill or operate thereon prior to the summer of 1899. On October 13, 1899, Zeigler, without any other lease or written contract or authority so to do than the lease above mentioned, sunk and completed a well on the land in which oil was found in paying quantities.

Upon these facts the court stated as conclusions of law, that appellees are the owners in fee of the land and are entitled to possession, and that they are entitled to recover

costs. The judgment quieted the title to the land in appellees.

Upon the facts found the lease, by virtue of its provisions, had either terminated before appellant sunk the well in October, 1899, or it had continued in force and was still in force on that date, and this without reference to anything the executors may have said or done at the time of the sale. It is not shown that they had any authority except to sell the land and distribute the proceeds. If the lease had terminated they had no authority to revive it; and if the lease was in force when the well was sunk in 1899 it was in force because it had continued in force from the time it was executed. So that it is immaterial what the executors said or did at the time the well was sunk. No act or statement of theirs was necessary if the lease was still in force, and, if it had terminated, no act or statement of theirs could revive the old lease, and it is not claimed that they undertook to make a new lease.

The question is, what is the proper construction to be given the following provision:

"In case no well is completed within thirty days from this date, then this grant shall become null and void unless second party shall thereafter pay at the rate of $143 annually for each year such completion is delayed. A deposit to the credit of first party in any bank doing business in Montpelier, Indiana, will be good and sufficient payment for any money falling due on this grant. Payable quarterly in advance, namely, $35.75 every three months. The second party shall have the right to use sufficient gas, oil and water to run all machinery for operating said wells, also the right to remove all its property at any time."

The time in which a well should be completed was postponed to February 26, 1896, by the payment of the $107.25. Within that time—in December, 1895—a well was sunk on the land, but neither oil nor gas was found, and a part of the appliances was removed from the premises and the well abandoned as worthless. Appellant never paid

any sum as rental or otherwise under the lease except the $107.25, never entered upon the premises after the abandonment of the first well, and never attempted to put down any other well until in the summer of 1899—a period of about three years—when he sunk and completed a second well which produced oil in paying quantities.

The provisions of this lease are substantially like those in the case of *Ohio Oil Co.* v. *Detamore* (1905), 165 Ind. 243. In that case payments had been made extending the time for completing a well until August 29, 1897. In March, 1897, an unproductive well was drilled, and the drill and other appliances removed from the premises. No further payments were made and no further steps taken under the contract until the spring of 1901, when a second well was drilled. This well was drilled under a proposition made by appellees that appellant would pay the back rent, $960 or more being then due upon the basis of the old contract's being still in force. No part of this payment was ever made or tendered. This well was a small producer of oil, but was abandoned in January, 1902, and all machinery and appliances removed from the premises. No further steps were taken to develop the property, and on August 12, 1902, appellees brought suit to quiet title. On August 18, 1902, pending the suit, appellant, over appellees' objection, returned to the premises and drilled well number three. In the opinion it is held that "the drilling of a dry hole in the spring of 1897, and then taking down the rig and removing all the machinery and other property from the premises, accompanied with the failure to pay in advance for another six months, marked the end of contractual relations between appellees and appellant's assignor," and that the arrangement made in the spring of 1901 was not a waiver of the default under the old contract, "for the old contract having become *nil,* there was nothing issuing from it to waive, nor was it, strictly speaking, a rehabilitation of the old contract, but in all

essential respects a new, independent, parol contract," and that appellant's "rights in the land having been lost by a disregard of its obligation, or by the exercise of its option not to go on with the exploration, could not, without appellees' consent, be reclaimed by anything it did, or offered to do, subsequently to the bringing of this suit." These holdings are applicable and controlling in the case at bar.

Judgment affirmed.