### ROLANDO v. ZESCH et al.

Second Division. Nome. March 6, 1926.

No. 2999.

**1. Mines and Minerals ⬤�longrightarrow58, 70(6)—Contracts—Defective Mining Leases.**

Plaintiffs made a written lease of mining grounds to the defendants, in which they leased the ground on a royalty basis. Plaintiffs brought suit to recover the sum of $2,000 claimed due by the terms of the lease, and attached copy of the lease to the complaint as an exhibit and allegation in the complaint. The

⬤⟶See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lease was not under seal, there were no subscribing witnesses, and the certificate of acknowledgment does not recite that the subscribing parties are known to the officer taking the acknowledgment. No acknowledgment was made by two attorneys in fact who signed, one for a lessor and one for a lessee. Other defects appeared in the acknowledgment. *Held*, on demurrer, that the lease, being exhibited as part of the complaint, defeats the allegation of the complaint; the lease is void; the facts alleged in the complaint could not be proved, and the plaintiffs could gain nothing by the facts (evidence) tendered in the complaint; the probata would defeat the allegata, or intended allegata; the demurrer sustained.

**2. Action ☞50(5)—Pleadings—Several Causes of Action Improperly Joined.**

On demurrer to a cause of action, based upon a quantum meruit for services rendered for different persons and at different times under the alleged instance and request of the defendants, not shown to be for their joint use and benefit, and not necessarily under one contract, if any, and including one item which was not a service at all, and the value of which could only be recovered on a showing of an actual sale or on a quantum valebant count. *Held*, the cause of action was not a mutual, open, or current account under relations contemplating same; several causes of action were thereby improperly united, and not separately stated; the demurrer sustained.

The complaint contains two counts to each of which the demurrer was directed on several grounds, only two of which need be considered: As to the first cause of action, "that the complaint does not state facts sufficient to constitute a cause of action;" and as to the second cause of action, that there is a "misjoinder of causes of action," and also that it "does not state facts sufficient to constitute a cause of action."

The complaint alleges for a first cause of action that on July 28, 1925, plaintiffs and defendants entered into a written lease of mining claims in the Council City recording district, Alaska, a copy of which lease was annexed to and made a part of the complaint; that under said lease defendants entered into possession of the said leased premises; that under the terms of said lease the defendants agreed to pay to plaintiffs, at Nome, Alaska, on or before the 1st day of October, 1925, the sum of $2,000, and "that there is due and payable by the defendants to plaintiffs the sum of $2,000, with interest, which the said defendants neglected and refused to pay, though re-

quested so to do." No consideration is alleged, except by means of the exhibit, the lease itself, for the alleged promises to pay; the lease itself reciting that the lessors, "for and in consideration of the rents, royalties, covenants, and agreements hereinafter reserved, and by the said lessees to be paid, kept, and performed, have let, and by these presents do let" the premises described, and, the lease being made a part of the complaint, perhaps an expressed allegation of consideration was not necessary. However, the lease was not under seal.

It is also observed that there were no subscribing witnesses to the lease, and that the certificate of acknowledgment does not recite that the subscribing parties to the lease were known to the officer to be the persons described in and who executed the lease; also that one of the lessors and one of the lessees appear to have subscribed said lease by an attorney in fact for each of them, respectively, and that the certificate of acknowledgment does not show that such attorneys in fact were authorized in writing to subscribe said lease for their principals, or that the execution of said lease by any of the parties was the free act and deed of such subscribing parties. It is further to be noticed that the lease provides that lessees shall cause the same to be recorded; that the term of said lease as therein expressed was "from date hereof until the said premises are mined out, unless sooner forfeited or determined under the provisions of this lease"—and then provides that "failure on the part of lessees to comply with any of the terms and provisions of this lease shall constitute a forfeiture, to be exercised at the discretion of the lessors." It is to be further observed that among the promises on the part of lessees to be performed were the following:

"To carry on actual mining operations on said leased premises during the entire summer season of 1926, employing sufficient equipment and force of men to show a bona fide intent and purpose to mine, and, in case of failure of lessees to comply with provisions of this paragraph, the said lessees shall pay to lessors at Nome, Alaska, on or before the 1st day of October of said year, the sum of $1,500.

"To pay to said lessors at Nome, Alaska, on or before the 1st day of October, 1925, the sum of $2,000; it being understood, however, that of the royalty to accrue to the lessors from mining operations on said premises during summer season of 1926, the value of $1,000 shall be remitted.

"To pay to said lessors a royalty on all gold extracted from said premises as follows: From ground which yields 72 cents per cubic

yard or less, 10 per centum of the gold extracted; from ground which yields over 72 cents and less than $1 per cubic yard, 15 per centum of the gold extracted; from ground which yields $1 or over per cubic yard, 20 per centum of the gold extracted.

"The royalty to be and become due and payable on the premises immediately following each and every clean-up."

But the lease also contained the further provision:

"It being agreed that the said lessees will employ Barney Rolando, of the lessors, or a representative chosen by him, as a laborer on or about the mining operations, at the going rate of wages. The person so employed to have the privilege of panning and testing the ground, cuts, and pits as operations are carried on; also of being present and participating in each and every clean-up, and in handling, retorting, drying, weighing, and dividing the yield. Such person to receive the royalty accruing to lessor and to receipt therefor or for the remittal as above in this lease provided."

G. A. Adams, of Nome, for plaintiff.
Chas. W. Thornton, of Nome, for defendants.

LOMEN, District Judge. Why the pleader should allege only a part of the "covenant," the promise to pay, without following the recitals in the lease, and showing that the defendants, lessees, were entitled to a "remittance" of, say, one-half of the amount, we can only conjecture. The provision for this payment, with its partial future remittance, immediately followed the promise to pay at a future date, $1,500 as a penalty or possible liquidated damages, in case of the breach of the covenants to mine in 1926. Is it not therefore likely that the promise to pay the $2,000 was also contingent upon the nonperformance of the like promise in 1925 or 1926, the condition being a casus omissus? But we dare not read these words into the agreement, and must find some other reasonable reason for this additional promise to pay.

It was argued by counsel for plaintiffs that lessors were impecunious and wished to provide for an advancement. If so, it might be that the promise was in the nature of a "loan" to the extent of the amount to be remitted and a "bonus" as to the balance. But, if either, or both, the promise would have to rest upon some consideration, which necessarily, and it is so expressed, was the lease, and consequently dependent on such lease. But what lease? Certainly, the lease bargained for, a lease for the term of years specified, none other; a

lease to be executed with all the formalities required by law, which was not subject to forfeiture by reason of the breach of any covenant impossible of performance, as, for instance, the agreement to record, which contemplated a lease entitled to record, which this was not, because it was not under seal, had no subscribing witnesses, and an improper or defective certificate of acknowledgment. Without such a lease there was no consideration for the promise to pay or advance any money on the strength of the lease or performance by plaintiffs. The promise was to pay in gross. The amount cannot be divided or apportioned as rent. It was not "rent" as the word is defined, to wit:

"A return or compensation for the possession of some corporeal inheritance. A certain profit, either in money, provisions, or labor, issuing out of lands and tenements, in return for their use." 3 Bouv. Law Dict. (Rawle's 3d Rev.) p. 2880. "The legal understanding of a lease for years is a contract for the possession and profits of land, for a determinate period, with the recompense of rent." U. S. v. Gratiot, 14 Pet. 538 (10 L. Ed. 573); Raynolds v. Hanna (C. C.) 55 F. 800.

The rent for mining leases, as we all know, is generally payable in kind, by way of royalties, and such rent was provided for in the lease; these alone "ran with the land," one of the conditions or attributes of rent. In the construction of this lease we are reminded of the maxim, "Qui hæret in litera, hæret in cortice." He who considers merely the letter of an instrument goes but skin deep into its meaning. The promise to pay the $2,000 should find some legitimate place in the lease and relation to the same. It certainly was not rent. Was it what is known as "debt"? It could not be so considered, because the amount was not liquidated. The actual amount due depended upon an indefinite amount to be remitted. It was not an amount that could be segregated or distributed as damages for "use and occupation" by reason of the lease as such being void under the statute of frauds. To be such it would have to be converted into a rent charge, which clearly was not intended. Nor is any use and occupation or its value alleged—only that defendants entered under the lease.

If the promise was "auxiliary," it does not appear to what it was auxiliary, or that it had any relation to the lease or the principal matter of the contract between the parties, which was the lease and the rent to be paid therefor.

The best the court can do is to treat the promise as a "dependent covenant"—dependent upon a lease for a term of years, good under the statute of frauds, which it was not, as we shall presently see. Without such lease there was no consideration for the promise, and the promise fell with the lease. William T. Hughes, in his preface to "Procedure, Its Theory and Practice," says:

"Facts must be made to appear in some juridical way, or the court will not take notice of them; and it is a great corollary of evidence that 'what ought to be of record, must be proved by record,' and by the right record."

And so we find that our statutes provide for certain "indispensable evidence," and that to prove the lease exhibited as a part of the complaint, or rather a lease for a term of years, as the parties clearly intended, the lease should have been under seal, signed by two witnesses, and been properly acknowledged. These were essential "formalities."

The following statutes (Compiled Laws of Alaska) fully bear this out:

Section 508: "Deeds executed within the district of lands or any interest in lands therein shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such; and the persons executing such deeds may acknowledge the execution thereof before any judge, clerk of the district court, notary public, or commissioner within the district, and the officer taking such acknowledgment shall indorse thereon a certificate of the acknowledgment thereof and the true date of making the same, under his hand."

Section 514: "No acknowledgment of any conveyance having been executed shall be taken by any officer unless he shall know or have satisfactory evidence that the person making such acknowledgment is the individual described in and who executed such conveyance."

Section 562: "The term 'conveyance,' as used in chapters thirteen, fourteen, and fifteen of this title, shall be construed to embrace every instrument in writing except a last will and testament, whatever may be its form and by whatever name it may be known in law, by which any estate or interest in lands is created, aliened, assigned, or surrendered."

Section 499: "A conveyance of lands, or of any estate or interest therein, may be made by deed, signed and sealed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged or proved, and recorded as directed in this chapter, without any other act or ceremony whatever."

Section 1876: "In the following cases an agreement is *void* unless the same, or some note or memorandum thereof expressing the con-

sideration, be in writing and subscribed by the party to be charged or by his lawfully authorized agent:

"(1) An agreement that by its terms is not to be performed within a year from the making thereof.  *  *  *

"(6) An agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest therein, or to charge or encumber the same.

"(7) An agreement concerning real property made by an agent of the party sought to be charged, unless the authority of the agent be in writing."

Section 1878: "No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law."

In the case of Waskey v. Chambers, 224 U. S. 564, 32 S. Ct. 597, 56 L. Ed. 885, Ann. Cas. 1913D, 998, the court says:

"The Circuit Court of Appeals went on the ground that a lease creates only a chattel interest and is not a conveyance, and therefore is not within the protection of the statute. But it is obvious that in principle the right of a lessee is the same as that of a purchaser in fee, and it would be a great misfortune, especially to mining interests, if a man taking a lease from those whom the record showed and he believed to be the owners, were liable, after spending large sums of money on the faith of it, to be turned out by an undisclosed claimant on the strength of an unrecorded deed. We find no words in the statute that require such a result. On the contrary, the word 'conveyance' is defined although for other purposes, as embracing every written instrument except a will by which any interest in lands is created. Act 1900, tit. 3, § 136, 31 Stat. 510; Code, part V, § 136. See title 2, § 1046, 31 Stat. 493; Code, part IV, § 1046. And the statute provides for the recording of leases, as well as of deeds and grants. Act 1900, tit. 1, § 15, 31 Stat. 327; Code, part III, § 15. Blackstone defines a lease as a conveyance. 2 Comm. 317. And in Shepard's Touchstone, 267, leases are ranked under the head of grants—'as in other grants.' The point does not need authority, except to exclude the notion that the statute uses the word in a narrower sense.  *  *  *

"Waskey was in possession and at work before the deed to Chambers was filed for recording; but we do not have to consider whether possession under the lease would have the same effect as getting the later instrument recorded before the earlier one under section 98 above quoted. For although the deed to Chambers was filed before the leases, it had no effect as against people without actual notice. It never had but one witness, two being necessary to authorize the recording of a deed, and the only acknowledgment was before the alteration. Therefore it was filed without authority, was not entitled to

registration, and, as we have said, had no effect as against the petitioner. Act 1900, tit. 1, § 15; title 3, §§ 82, 95, 31 Stat. 327, 503, 505; Code, part III, § 15; part V, §§ 82, 94; Alaska Exploration Co. v. Northern Mining & Trading Co., 152 F. 145, 81 C. C. A. 363."

In Alaska Exploration Co. v. Northern Mining & Trading Co. (C. C. A.) 152 F. 145, the court excluded from evidence a certified copy of a deed, recorded, but with informalities of one witness and no acknowledgment. Would the original, in view of the informalities, have been admitted? We think not, in view of the section above quoted. Such conveyance or lease would be "void" (section 1876), and no estate "created" (section 1878).

The lease, being exhibited as a part of the complaint, defeats the allegations of the complaint, which are based, if efficacious for any purpose, upon a lease valid in fact.

The demurrer does not admit legal conclusions to the effect that the parties "entered into a lease," or that by the terms of said lease any money became due, or that "there is due and payable." Conclusions of law not admitted by demurrer. McCreery v. Berney Nat. Bank (1896) 116 Ala. 224, 22 So. 577, 67 Am. St. Rep. 105; Aron v. Wausau (1898) 98 Wis. 592, 74 N. W. 354, 40 L. R. A. 733: cases; Hopper v. Covington, L. C. 4; Greeff v. Equitable Life Assur. Soc. (1899) 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659; Bouv. Dict."

The facts alleged could not be proven, and the plaintiff could gain nothing by the facts (evidence) tendered in the complaint. The probata would defeat the allegata or intended allegata.

The lease also provided, under penalty of forfeiture, the recordation thereof by lesees—a legal impossibility. If recorded, it would have no efficacy as a protection to either of the parties. This provision might not affect the validity of the lease; but it certainly affected the consideration for the promise to pay a sum of money in gross, which depended upon a valid lease and one entitled to record.

There is no allegation that the lessors performed the agreements by them to be performed. The execution of a valid lease was one of them.

To the extent that the promise to "pay" $2,000 was a loan, to be repaid by a remittance, it was a promise that might be

breached like any other promise, and, if breached, the measure of damages would not be the amount of the promised loan (which was not definite or liquidated), but the difference between the interest that would have been paid had the promise been fulfilled, and the interest that plaintiffs would have been compelled to pay or did pay for a loan elsewhere. The law presumes that money is always in the market and that plaintiffs could have obtained a loan elsewhere. 8 R. C. L. 464, §. 31. If the $2,000 had been paid, defendants could have recovered the money as money had and received without consideration.

If the $2,000 be considered as rent to be paid, then to maintain the action on the "covenant" it would be necessary to show a valid lease at law—one "sufficient to pass the estate therein demised; otherwise, the covenant for the payment of rent, which is dependent on the interest in the demised premises created by the agreement, is wholly inoperative as a covenant." 16 R. C. L. p. 995, § 511.

Thus, where a statute requires a lease for a term of years to be under seal, witnessed, acknowledged, or recorded, to be valid, an action of covenant, on a lease not executed with these formalities, cannot be maintained, though the lessees enter under the lease. Id.; Anderson v. Critcher, 11 Gill & J. (Md.) 450, 37 Am. Dec. 72, and note.

The plaintiffs in such a case may not, however, be wholly without a remedy. Where entry is made under such a lease, void for statutory informalities, a tenancy may be implied by the law from the occupation of the premises. The "agreement" in such a case is *void* at the option of the parties or either of them. Id. 574, § 49. The tenancy then becomes a tenancy at will (Id. § 50), or, at least, a tenancy from year to year (Id.). But a promise to pay rent in gross and in advance could not then be collected—only the reasonable value of the use already had. But this is not the case now presented.

In concluding this branch of the opinion, I am constrained to say that the lease exhibited in this case is in a class by itself. As said by the court in Ohio Oil Co. v. Detamore, 165 Ind. 248, 73 N. E. 908, the difficulties which have beset the courts in this class of contracts, whether by reason of the "design of crafty speculators to enshroud their contracts with doubtful, ambiguous, inconsistent and absurd provisions, as a means of promoting their interests," or whether it comes from want

of skill in the draftsman, have caused the courts to look critically into such contracts for the real intention of the parties, "because it so frequently happens that they cannot, on account of incongruous provisions, be enforced according to the strict letter of the contract," or in this case at all.

The demurrer to the first cause of action is accordingly sustained.

As to the demurrer to the second cause of action, it is sufficient to say that the cause of action is based upon a quantum meruit for services rendered for different persons and at different times, under the alleged instance and request of the defendants, not shown to be for their joint use and benefit, and not necessarily under one contract, if any, and includes one item, a tent, which was not a service at all, and the value of which could only be recovered on a showing of an actual sale or on a quantum valebant count. The cause of action was not a mutual, open, or current account under relations contemplating same. Several causes of action were improperly united, not separately stated, and on this ground the demurrer to the second cause of action is also sustained.

So ordered.