## LOWDERMILK v. OHIO OIL CO.
### No. 10616.

United States Court of Appeals
Seventh Circuit.
April 6, 1953.

Rehearing Denied May 11, 1953.

John W. Becker and Clarence R. Martin, Indianapolis, Ind., for appellant.

Joseph Diver, Terre Haute, Ind., Hubert Hickam, Thomas M. Scanlon, Lester Irons, and Jerry P. Belknap, Indianapolis, Ind., Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel, for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

Sullivan Petroleum Corporation (sometimes referred to as Sullivan), an Indiana corporation, was organized in August 1941, to deal in oil and gas properties and to drill and operate wells thereon. Plaintiff, since April 20, 1943, has been the qualified and acting Receiver for Sullivan by order of the Circuit Court of Sullivan County, Indiana. Defendant, Ohio Oil Company (sometimes referred to as Ohio), an Ohio corporation, was and is engaged in the business of producing and marketing oil and gas.

The instant action was commenced in the Marion Superior Court of Marion County, Indiana, on April 26, 1950, to recover the proceeds from oil produced and sold by defendant from two wells, with interest thereon, on the ground that the oil was wrongly converted by defendant to its own use. Upon defendant's petition showing diversity of citizenship with the requisite amount in controversy, the action was removed to the District Court of the United States for the Southern District of Indiana, Indianapolis Division. Defendant asserts title to the

wells and the oil produced therefrom by virtue of written assignments of two leases covering the premises on which the wells are located. Plaintiff contends that the assignments were invalid for lack of consideration and because made in violation of the express statutory limitation upon the powers and authority of the officials of Sullivan. The written assignments were attached to and made a part of the complaint. Defendant filed an answer and submitted affidavits. Neither the complaint nor answer was verified. Upon defendant's motion, the court, on February 21, 1952, entered a summary judgment in its favor on the ground that there was no genuine issue as to any material fact and that the defendant was entitled to a judgment as a matter of law. From such judgment plaintiff appeals.

The complaint alleges that immediately upon incorporation Sullivan acquired by assignment from the lessees certain oil and gas leases and drilling equipment, and that two of such leases, designated by the names of their landowner-lessors as the Poe and Hayden leases, were of great value; that on April 1, 1942, the only property of any value possessed by Sullivan was the right of mining for and producing oil and gas from the land described in these two leases, together with certain drilling equipment and a partly drilled well on the Poe lease (called the Poe well), which on that date had reached a depth of some 1,700 feet; that on April 1, 1942, defendant "induced the President and Secretary of Sullivan * * *, by means to the plaintiff and Sullivan * * unknown, but well known by defendant, to agree to transfer and assign to defendant * * * the Albert Poe lease, together with the Poe well, without payment to Sullivan * * * of anything therefor, and without agreeing to pay anything therefor, and without promising anything therefor * * * together with all other property of Sullivan * * * excepting said drilling equipment of nominal value."

The complaint alleges that on the 26th day of April, 1942, "pursuant to said arrangement," Sullivan made and delivered a written assignment of the Poe lease and the Poe well to the defendant, and that on April 27, 1942, "pursuant to said arrangement,"

Sullivan made and delivered a written assignment of the Hayden lease to defendant but that they were without consideration, although it was shown that if defendant drilled on the Hayden lease and produced oil therefrom, Sullivan was to receive as royalty a one thirty-second part thereof.

The complaint alleges that the defendant continued with the drilling of the Poe well until it reached a depth of about 2,300 feet, where oil was found in large quantities, and that defendant drilled a well upon the Hayden lease, where oil was likewise discovered in large quantities. It alleges that the defendant has received from the sale of oil from each of these wells the sum of $750,-000 (a total of $1,500,000). Recovery was sought for this amount on the ground that plaintiff and not defendant was the owner of both the Poe and Hayden wells and that defendant had wrongfully appropriated to its own use the oil produced therefrom. It is admitted by the complaint that payment has been made for a one thirty-second part of the oil produced from the Hayden well, which payment plaintiff tendered as a credit upon any sum found owing by the defendant.

The Poe assignment was executed on April 26, 1942, and recites that Sullivan "for and in consideration of the sum of One Dollar ($1.00), receipt of which is hereby acknowledged, and other good and valuable consideration, does hereby bargain, sell, transfer, assign and set over" to Ohio certain described oil and gas leases, including Poe. The instrument recites that Sullivan, for the same consideration, assigned and set over to Ohio "that certain test well for oil and gas now located on the premises above described * * * together with the casing now in said well." Ohio agreed that if drilling resulted in a dry hole, it would "pull from said well all casing therein which can be pulled through ordinary methods" and would deliver the same to Sullivan on the premises described. Ohio also agreed that in the event of a dry hole, "it will plug said well in accordance with the laws, rules and regulations of the State of Indiana," and further, that if the drilling operations resulted in a producing oil or gas well, it would deliver to Sullivan casing of the same

kind and value as that then located in the well or that it would pay Sullivan the market value of casing of like grade and quality. It was provided that unless Ohio commenced or caused to be commenced operations for the deepening of the Poe well on or before June 1, 1942, and prosecuted the same with due diligence to a depth at which the formation commonly known and referred to as the Niagara Limestone might reasonably be expected to occur, the assignment and all rights thereunder should terminate as to both parties and "the oil and gas leasehold estate herein assigned shall revert" to Sullivan, its successors and assigns. The instrument concludes with the covenant that Sullivan was the lawful owner of and had good title to the lease and property assigned, and that all conditions necessary to keep the lease in full force had been duly performed.

The Hayden assignment was executed April 27, 1942, the day following the execution of the Poe assignment, and covered a lease dated June 21, 1940, for a 40-acre tract, and two other leases dated June 6, 1940, for tracts of 20 and 46 acres. The phraseology of this instrument differed from that of the Poe assignment by providing for delivery to Sullivan of an overriding royalty of one thirty-second part of the oil and gas produced upon the Hayden land. It also provided that unless Ohio should on or before the 1st day of June, 1942, commence or cause to be commenced operations for the deepening of the Poe well (covered by the Poe assignment) and prosecute said operations with due diligence to a formation commonly known as the Niagara Limestone, the assignment should terminate as to both parties and the estate should revert to Sullivan. This assignment also differed from that of Poe by providing that if oil was found in the Poe well in paying quantities at a lesser depth than that at which the Niagara Limestone might reasonably be expected to occur, the condition for deepening the Poe well should be considered as fully met and complied with.

It appears pertinent at this point to note that Sullivan and Ohio, on April 25, 1942, executed a "rental contract" agreement by which Sullivan rented to Ohio certain described drilling equipment and tools then located on the property described in the Poe assignment. By this agreement Ohio obligated itself to pay so much per day for a designated period of time for the use of such equipment. Ohio agreed that it would not remove such machinery and equipment from the Poe property without the written consent of Sullivan and the latter agreed that upon termination of the agreement, it would promptly remove said machinery and equipment from the Poe property and, in such event, that Ohio would be relieved of all obligations under the agreement.

In the view which we take of the case, we think it unnecessary to relate in detail the allegations of the lengthy answer interposed by defendant. It is denied that plaintiff is the owner of the Poe well or is entitled to the proceeds from the oil produced therefrom, and it is asserted that the defendant performed all the terms and conditions imposed upon it by both assignments, including the actual payment of the $1.00 mentioned as consideration, payment to plaintiff of the overriding royalty provided for in the Hayden agreement, payment to plaintiff of the value of the casing located in the Poe well at the time of the execution of the Poe assignment, and payment to plaintiff of the rental provided for in the rental contract for the use of Sullivan's machinery and equipment in deepening the Poe well. Defendant in its answer also relates in considerable detail certain court proceedings to which plaintiff was a party in the State courts of Indiana, by reason of which defendant alleges that plaintiff is estopped to assert that the Poe assignment is invalid for want of consideration or for any other reason. For reasons subsequently to appear, we shall not set forth the allegations of the answer in this respect.

The issues involved in this litigation have dwarfed materially since its inception. Plaintiff apparently has abandoned, at any rate it is no longer contended, that the Poe and Hayden assignments were executed by the officials of Sullivan in violation of their authority. And in the enumeration of points to be relied upon by the plaintiff in this court, it is stated, "The plaintiff renounces all claims made by it as stated in its

complaint herein and which are founded upon the Hayden assignment." Thus, the sole contested issue remaining in the case is whether the Poe well and the oil produced therefrom is and was the property of the plaintiff or that of the defendant. Or, as stated by plaintiff in his brief, "The particular issue is the ownership of the right to produce and market oil from a particular oil and gas lease known as the Albert Poe. This question of ownership is dependent upon two writings, exhibits A and B herein, called assignments. Plaintiff contends that defendant acquired no right to produce the oil from the Albert Poe lease by these writings, while the defendant contends that it did."

As already noted, it is not disputed, in fact it is conceded, that Ohio has performed all conditions contained in both assignments with the exception that it is claimed by plaintiff that the Poe well was not drilled to the Niagara Limestone formation. It is also pertinent to note that there is no allegation in the complaint and no contention that Ohio practiced any fraud or deception upon Sullivan in the procurement of the assignments or that they were entered into other than at arm's length. True, it is alleged that Ohio induced the officials of Sullivan to make such assignments without consideration. This allegation is in the nature of a conclusion and, in any event, falls far short of charging Ohio with fraud or deception.

It is apparent from what has been said that plaintiff has had a difficult time in selecting a position upon which to take a firm stand. Recovery was first sought upon the ground that the assignments were void because they were executed without corporate authority on the part of Sullivan and that plaintiff was entitled to recover the proceeds from oil produced and sold from both Poe and Hayden. Not only has that position been abandoned, but the right to recover the proceeds from oil produced and sold from Hayden has been disclaimed. Even now we have difficulty in discerning the precise basis upon which plaintiff seeks to recover for the oil produced and sold by Ohio from the Poe well. Plaintiff, however, appears to recognize that the assignments

were valid options by which Ohio acquired the right to prospect for oil, but contends that having acquired such right and having elected to perform the conditions enumerated, it did not acquire title to the Poe premises or the oil produced from the Poe well. It is well to keep in mind that under plaintiff's theory and the issue as here presented, all the oil produced from the Poe well or the proceeds realized therefrom is either the property of plaintiff or that of defendant. There is no alternative by which the oil or proceeds can be divided between the parties.

It is hardly open to question but that under the plain, unambiguous phraseology of both assignments, Ohio upon performance became the owner of the property described therein, which included, of course, the Poe well and the oil produced therefrom. It is insisted by plaintiff, however, that we must take into consideration the intent of the parties as to the purpose, scope and ultimate object to be attained by the assignments and that this requires us to read into the Poe assignment an implied reverter, that is, that upon discovery of oil by Ohio, title to the Poe well and the oil produced therefrom reverted to plaintiff.

■ We agree with plaintiff's suggestion that this court should follow the law as announced by the Supreme Court of Indiana relative to the effect to be given oil and gas leases. Plaintiff cites numerous of such decisions, the more important perhaps being Gadbury v. Ohio & Indiana Consolidated Natural & Illuminating Gas Co., 162 Ind. 9, 67 N.E. 259, 62 L.R.A. 895; Ohio Oil Co. v. Detamore, 165 Ind. 243, 73 N.E. 906; Consumers' Gas Trust Co. v. Littler, 162 Ind. 320, 70 N.E. 363. Plaintiff also relies heavily upon Federal Oil Co. v. Western Oil Co., 7 Cir., 121 F. 674 (a decision of this court). All of these cases as well as others upon which plaintiff relies were suits in equity either to cancel a lease, to quiet title, or for specific performance upon the basis that the lessee had failed to perform conditions which were a prerequisite to the acquirement of title. More specifically, the lessees failed to perform either an express condition, usually that drilling be commenced by a certain date, or a condition which the court held to be implied from the

nature of the transaction. For failure of such performance it has been generally held that the lessee was divested of all interest or, as stated by some of the courts, upon such failure, the interest which the option conferred upon the lessee reverted to the landowner. In contrast to cases where there was a failure of performance, we are now considering a situation where admittedly there was complete performance.

In the Gadbury case, 162 Ind. 9, at page 14, 67 N.E. 259, at page 261, the court stated:

"In grants of the character in question, the title is inchoate, and for the purpose of exploration only, until oil or gas is found in quantities warranting operation; and while the courts manifest a disposition to protect the grantee at this stage, by treating his interest as no longer postponed to the happening of a condition precedent, yet it is thoroughly settled that he cannot omit to develop the property and hold the grant for speculative purposes purely." (Citing many cases.)

In the Consumers case, 162 Ind. 320, at page 325, 70 N.E. 363, at page 365, the option, or lease as it was called, fixed no time for the beginning of drilling operations or the completion of a well, and the court held that there was an implied obligation to do so within a reasonable time, and for a failure to do so a forfeiture of the lessee's interest would be declared. The court made a statement relevant to the instant situation, as follows:

"There is nothing in the subject-matter of the contract to limit the power of the parties to enter into such mutual obligations as they liked. No fraud or overreaching is claimed, and it becomes our plain duty to give the instrument the effect intended by the parties at the time it was executed."

In the Detamore case, 165 Ind. 243, 73 N.E. 906, the court pointed out, as is the situation here, that the lessee (assignee here) was under no obligation to perform the conditions recited in the option, that is, it could elect to perform or not to perform. Relative thereto, the court stated, 165 Ind. at page 250, 73 N.E. at page 909:

"If the grantee [lessee] had decided in the affirmative [that is, to perform], and had entered upon the land, and proceeded with the execution of the contract, and completed a well within the option period, then acceptance would have been complete, and the grant effective."

Federal Oil Company, 7 Cir., 121 F. 674, often cited by the Indiana courts, is another case where it was held that an oil and gas lease constituted a mere option because no obligation was assumed by the lessee to do anything, either to drill or to pay. In so holding, the court stated, 121 F. at page 676:

"The legal effect of the instrument here in question is therefore the grant of a mere use for the purpose of prospecting. The title is inchoate, and for purposes of exploration only until oil or gas is found.

"If not found, no estate vests in the lessee, and his title, whatever it is, ends with the abandonment of the unsuccessful search. If found, the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract."

And on the following page the court stated:

"Tender of performance is absolutely necessary, especially in cases of optional contracts."

Under the rationale of these cases, as well as others which could be cited, we see no escape from the conclusion that Ohio by performance acquired title and ownership to the oil rights covered by the two assignments and to the oil produced therefrom. It is hardly open to question that this is so under the plain, unambiguous language of the instruments. There being sufficient consideration for the options, which under plaintiff's theory must be assumed, we think it was sufficient to vest title in Ohio upon performance. Furthermore, even though only the Poe assignment is presently involved, the transaction which resulted in both assignments must be looked to in ascertaining the consideration. If there was sufficient consideration for the

Hayden assignment, which now appears to be conceded, there was likewise sufficient consideration for the Poe assignment because, in addition to the fact that they were both inseparably part of the same transaction, they each depended upon performance of the same condition by Ohio, that is, the deepening of the Poe well.

Plaintiff argues, however, that notwithstanding the plain phraseology of the two assignments, the court must ascertain the real intention of the parties, which was that Ohio acquired no interest or title in the Poe well or the oil produced therefrom, or, in any event, that the court should read into the Poe assignment an implied covenant that any right or title acquired by Ohio upon deepening the Poe well and the discovery of oil should revert to plaintiff—more specifically that Sullivan take all and Ohio nothing from the latter's production of oil from the land covered by the Poe lease, including that produced from the Poe well. This theory, in our view, is completely dispelled by the provisions of the instrument. In the first place, the assignment, under plaintiff's theory, would serve no purpose. Under that theory, nothing more was required than an agreement by Ohio to deepen the Poe well at its own expense for the sole benefit and profit of Sullivan. If that was the intention, why did Ohio, in case of a dry hole, agree to pull the casing then in the well and deliver it to Sullivan? Why did it agree, in case of a dry hole, to plug the Poe well, as required by law? Why did it agree, in the case of a producing well, to pay Sullivan for the casing then in the well or to deliver to Sullivan casing of the same kind and value? These promises by Ohio are consistent only with the theory that Ohio, upon performance, was to become the owner of the Poe well.

Also, as previously noted, the parties on April 25, 1942 (the day previous to the execution of the Poe assignment), as a part of their arrangement, entered into a "rental contract" by which Sullivan rented to Ohio for a stipulated consideration certain drilling equipment owned by the former and then located upon the Poe premises. It is hardly conceivable that Ohio would have obligated itself to pay rental on Sullivan's equipment to be used in drilling a well for Sullivan or a well that was to become the property of Sullivan, together with the oil produced therefrom. This agreement, in our view, is consistent only with an understanding that the rights covered by the Poe assignment were, upon performance, to be vested in Ohio.

Furthermore, the assignment provided that in the event of failure of performance by Ohio to deepen the Poe well, "the oil and gas leasehold estate herein assigned shall revert" to Sullivan. Thus, with an express provision for reverter for failure to perform by Ohio, we are now urged to hold that there was an implied reverter upon performance by Ohio—in other words, an express reverter in the event of nonperformance, an implied reverter in the event of performance. That a reverter will not be implied under such circumstances has been held both by this court and the Supreme Court of Indiana. Johnson v. Igleheart Bros., 7 Cir., 95 F.2d 4, 9; Smith v. Sparks Milling Co., 219 Ind. 576, 585, 39 N.E.2d 125, 128.

Assuming that which we think is not a fact, that the Poe and Hayden assignments are open to construction, plaintiff is confronted by the well-established rule that a court will ordinarily follow the interpretation which the parties have given to the instrument in controversy. Board of Commissioners v. Gibson, 158 Ind. 471, 63 N.E. 982; Brumfield v. State ex rel. Wallace, 206 Ind. 647, 659, 190 N.E. 863, 867. We find no occasion to set forth in any detail the various Indiana State court proceedings in which the Poe and Hayden assignments have been involved in one way or another and upon which the defendant predicates its contention that plaintiff is estopped to assert ownership in the Poe lease or the Poe well. This is so for the reason that it becomes unnecessary, in the view which we take, to consider or decide defendant's contention in this respect. However, the State court proceedings are material as showing the practical construction which the parties have bestowed upon these instruments. The instant suit was commenced April 26, 1950, almost seven years subsequent to the time when Ohio commenced

the production of oil from the Poe well, and until the commencement of suit the record furnishes no indication that plaintiff claimed either directly or indirectly to be the owner of the Poe well or the oil produced therefrom. In other words, it was seven years after the alleged wrongful conversion by Ohio was commenced before plaintiff asserted the contention here advanced. On September 7, 1943, plaintiff as Receiver filed in the Sullivan Circuit Court a petition showing his appointment as Receiver and that as such he was authorized "to take charge of and receive all assets or money belonging to the corporation [Sullivan], or due to the corporation, or which may accrue to the corporation during the receivership." The prayer of the petition was that the royalty for the one thirty-second part of the oil produced from the Hayden well be paid to the petitioner. The court, on September 27, 1943, entered an order as requested. If plaintiff at that time had thought Sullivan was the owner of the Poe well, the oil produced therefrom, or the proceeds thereof, it is only reasonable to conclude that such a claim would have been asserted.

On August 12, 1943, plaintiff as Receiver brought suit in the Sullivan Circuit Court against Ohio, (1) to recover under the rental contract of April 25, 1942, (2) to recover for the value of the casing in the Poe well, as provided for in the Poe assignment, and (3) to recover the royalty provided for in the Hayden assignment. Ohio did not dispute its liability, in fact conceded that it was liable for the amounts claimed, but had postponed payment because there was a controversy between plaintiff as Receiver and some of the creditors of Sullivan as to who was entitled to the money. It, therefore, filed a counterclaim in the nature of an interpleader. It would appear that suit and recovery by plaintiff upon certain provisions of the Poe and Hayden assignments constituted a recognition of their validity, and failure to assert or contend at that time that it was entitled to the oil produced from the Poe well is, to say the least, a strong circumstance indicating that plaintiff's present position is without merit. Plaintiff's failure in this respect could not have

been an oversight because Ohio in its counterclaim expressly alleged title to the Poe well and oil produced therefrom. True, plaintiff in his answer thereto did not admit such allegation but merely asserted that he was without knowledge as to whether Ohio had title to the Poe well. It is rather a strange anomaly that plaintiff, when all the facts and circumstances were fresh in the minds of the parties and with the opportunity clearly presented, not only failed to claim title but also failed to take issue with Ohio's assertion of title. It apparently was only after the lapse of some seven years that plaintiff made the discovery that the intention of the parties from the beginning was that Ohio acquired no right or interest in the property covered by the Poe lease. This long delay by plaintiff in asserting title to the property covered by the Poe assignment, particularly when the opportunity was so readily available, militates strongly against the position here sought to be maintained.

Plaintiff points out the large sums of money which Ohio has received from the sale of oil produced by the Poe and Hayden wells and compares it with a rather insignificant amount received by plaintiff (royalties from the Hayden assignment). Upon this premise it is argued that a denial of the relief sought produces an unconscionable result which a court should not tolerate. While we think there is no merit in this argument, we must admit it has some appeal. However, we suppose the same or a similar argument could be made in all instances where oil rights are conveyed or assigned in an undeveloped field and where oil is discovered in quantities even beyond what could have been hoped for by the parties. The result, however, is not the yardstick to be employed in determining the validity of an agreement by which such rights were conveyed. More relevant is the situation of the parties and the conditions existing at the time of the conveyance. Here, Sullivan had acquired rights in certain oil leases covered by the Poe and Hayden assignments which were shortly to expire, the former in 40 days and the latter in 55 days. It is without dispute on this record that unless there was further

exploration within such limitations, all rights possessed by Sullivan would automatically expire. Sullivan was without the money, or credit by which it could be obtained, to continue the drilling of the Poe well or to commence the drilling of other wells. It was almost at the end of its row, in a state of desperation. It stood no chance to lose but could only gain by its arrangement with Ohio. True, its chance to gain was not great but, even so, it was perhaps commensurate with the unfortunate situation in which it was then engulfed.

We have examined other contentions advanced by plaintiff which, in view of what we have said, we regard as irrelevant, and they need not be discussed. In our view, there was no genuine issue as to any material fact, and the case was proper for the entry of a summary judgment.

The judgment appealed from is Affirmed.