O. W. MAYHEW, L. T. Huston, Jr., Fred J. Keller, R. L. Keller, Plaintiffs-Appellants,

v.

Juanita Robson CALLARD, Mary Louis Fleming, James M. Fleming, Defendants-Appellees.

No. 13631.

United States Court of Appeals Seventh Circuit.

Jan. 10, 1963.

Rehearing Denied Feb. 18, 1963.

---

William P. Foreman, Evansville, Ind., Edward G. Proctor, Chicago, Ill., Fred P. Bamberger, Evansville, Ind., for appellant.

Douglas H. McDonald, Princeton, Ind., Jack C. Brown, Indianapolis, Ind., McDonald & McDonald, Princeton, Ind., Jenner & Brown, Indianapolis, Ind., for appellees.

Before DUFFY, KILEY, and MAJOR, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity action seeking to quiet title in plaintiffs to a 160 acre oil and gas leasehold estate in Gibson County, Indiana. Defendants-appellees'[1] counterclaim sought the same relief and damages for conversion of oil produced from the land. The District Court, without a jury, decided in plaintiffs' favor as to 30 acres, in appellees' favor as to the remaining 130 acres, and awarded appellees damages for conversion of the oil produced from the 130 acre portion. Plaintiffs have appealed.

---

1. Hereinafter referred to as appellees. Defendant James Fleming is the husband of Mary Louis Fleming. Charles Callard, husband of Juanita Callard, was a defendant but died during the pendency of this litigation.

Appellees, at all times in question, have been owners of the fee in the land. In May and July of 1951, they executed oil and gas leases to Kidd, Cherry, and Greer, covering the 160 acres of land, for a term of one year, and so long thereafter as oil was produced.

On July 1, 1958, those lessees assigned their leasehold interests to plaintiffs Mayhew and Huston. On July 1, 1959, Mayhew and Huston assigned one-fourth interests to plaintiffs Fred Keller and R. L. Keller.

On March 20, 1954, appellees Callard and Fleming filed a quiet title action in the Circuit Court of Gibson County, Indiana, on the ground that the 1951 leases to Kidd and his co-lessees had been forfeited for nondevelopment. On June 15, 1954, a default judgment as to all but 30 acres was entered in their favor. The judgment has never been appealed.

In 1959, plaintiffs, assignees of the original leases, began production on the 30 acre tract and on part of the 130 acre tract. Appellees objected and this suit followed.

The basic question presented here is whether the District Court's findings of fact, supporting its conclusion that plaintiffs' leases had been forfeited for nondevelopment, are clearly erroneous.

The court found that the 1951 lease rights had been forfeited for nondevelopment; that the original lessees drilled wells 1, 4 and 6, each of which required ten acres of the property, and drilled no wells after November 18, 1952, although prudence dictated further development; that in September, 1953, at a conference attended by Huston, then Kidd's employee, Kidd told appellees there would be no further development and was given notice that appellees would declare a forfeiture; and that in October, appellees gave a 90 day notice of forfeiture and in March, 1954, filed suit in the Gibson County Court.

The District Court further found that when Huston took assignment of the leases he knew of the notice of forfeiture in 1953, and knew that no development followed; that Mayhew knew of the pendency of the Gibson County suit to cancel the lease for nondevelopment, and, in June or July, 1954, when inquiring into a lease of the property, was informed of a judgment [2] cancelling the leases for nondevelopment; and that Huston, in January, 1960, offered appellees $2,000 for a new lease and admitted knowledge of the nondevelopment.

The court also found that the Kellers accepted assignments "without warranty of title express or implied," knew the terms of the original leases, and made no effort to learn whether development had extended the original term.

We find a substantial basis in the record for these findings, and they are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure.

Based on those findings, the District Court concluded that the original lessees had forfeited, for nondevelopment, their rights in the 130 acres, and that the plaintiffs as assignees took no greater rights than their respective assignors had, and had no right, title or interest in the property except for the 30 acres on which wells 1, 4, and 6 were developed and maintained.

We see no merit in the contention that forfeiture is not the proper remedy under Indiana law. In addition to the forfeiture clause in the lease, Indiana law implies a forfeiture provision for nondevelopment. Gadbury v. Ohio & Indiana Consolidated Natural & Illuminating Gas Co., 162 Ind. 9, 67 N.E. 259, 62 L.R.A. 895 (1903), Consumers Gas Trust Co. v. Littler, 162 Ind. 320, 327, 70 N.E. 363, 366 (1904). See also Judge Major's opinion, on the general rule, in Lowdermilk v. Ohio Oil Co., 203 F.2d 399, 403 (7th Cir., 1953).

We distinguish Carr v. Huntington Light & Fuel Co., 33 Ind.App. 1, 5,

**2.** We refer to that judgment only as furnishing a ground for the finding of Mayhew's knowledge of nondevelopment.

70 N.E. 552 (1904), relied on by plaintiffs. There, the lease had no provision for nondevelopment, and the court made no mention of the Indiana Supreme Court's Gadbury and Littler decisions. We hold that the court did not err in concluding that plaintiffs' leases were forfeited for nondevelopment. In view of this holding, we need not decide whether the Gibson County judgment was void as a violation of due process.

■ Plaintiffs argue that appellees, because of their inaction after receiving increased royalty checks following plaintiffs' resumption of production, cannot contest the validity of their leases. They admit that appellees may not have had any indication of resumed production until September, 1959, and the court found, with justification, that appellees began acting at once to protect their rights. On this record, we cannot say that the District Court should have ruled in plaintiffs' favor on the ground of equitable estoppel. Barden v. Overmeyer, 134 Ind. 660, 664, 34 N.E. 439, 440 (1893), Johnson v. Spencer, 49 Ind.App. 166, 170, 96 N.E. 1041, 1043 (1912), 19 American Jurisprudence, 663–666 (1939 ed.).

■ The District Court did not err in deciding that Mayhew and Huston [3] willfully converted appellees' oil or the proceeds from its sale. The decision is based on these findings which have substantial basis in the record: Both Huston and Mayhew were experienced in oil and gas leases. They both knew when they accepted assignments of the leases in 1958 that, unless extended by development, the leases had expired by their terms. And both knew that the 130 acres had not been developed since 1953.

Whether they did not in 1958 recall what they knew in 1953 and 1954 about the property was a question of fact for the court to decide. They are not, in the context of this case, in a situation similar to that of White, the notary public, in White v. Fisher, 77 Ind. 65, 70 (1881). And their position is not similar to that of the second lessee in Kahle v. Crown Oil Co., 180 Ind. 131, 100 N.E. 681 (1913).

■ The court found that plaintiffs wrongfully proceeded to redevelop the wells on the 130 acre tract, and in the process commingled the oil of both tracts. The District Court attributed 50% of the conversion to the 130 acre tract. Judgment against Huston and Mayhew was $3,055.42 each; and against the Kellers for $780.00 each.[4] The former claim there is no basis for the 50% figure.

There is testimony that Huston told one of the appellees that after well 2 on the 130 acre tract was closed down, the royalty checks would be reduced to about one-half of what they had been in January. In addition, there was testimony that the water injection process on the 30 acre tract would not only have aided removal of oil from the common reservoir on appellees' property, but also from the adjoining Blood property under lease to plaintiffs. We cannot say, on this testimony, that the court improperly approximated the percentage of oil converted. This question is not adequately presented by the parties in the briefs, and in view of the finding of wrongful conduct by Huston and Mayhew, we are not disposed to search the record for further support of the 50% figure.

For the reasons given, the judgment is affirmed.

3. They admit the court rightly found that the Kellers were not willful trespassers; and that it correctly deducted their share of costs and expenses from their share of the value of the oil taken.

4. The court properly credited the Kellers with expenses of drilling and, because of the willfulness of Mayhew and Huston, properly refused to credit them similarly.